D. Blair Clark, ISB No. 1367
Jeffrey P. Kaufman, ISB No. 8022
LAW OFFICES OF D. BLAIR CLARK PLLC
1513 Tyrell Lane, Suite 130
Boise, ID 83706
Phone: (208) 475-2050
Fax: (208) 475-2055
Email dbc@dbclarklaw.com
Email jeffrey@dbclarklaw.com

Attorneys for the Debtor

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF IDAHO

| | |
|---|---|
| In re:<br><br>PATRICK JOSEPH MOONEY,<br><br><br>Debtor. | Case No. 12-01243-TLM<br><br>Chapter 13 |

### Notice of Motion For Approval to Sell Real Property

<u>No Objection</u>.  The Court may consider this request for an order without further notice or hearing unless a party in interest files an objection within **21** days of the date of this notice.

If an objection is not filed within the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice or hearing

<u>Objection</u>.  Any objection shall set out the legal and/or factual basis for the objection. A copy of the objection shall be served on the movant.

<u>Hearing on Objection</u>. The objecting party shall also contact the court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

## MOTION FOR APPROVAL TO SELL REAL PROPERTY

COMES NOW the debtor, by and through his counsel of record, Jeffrey P. Kaufman, of

the Law Offices of D. Blair Clark, and, pursuant to 11 USC §§ 363(b), 1303, hereby moves to

sell Debtor's real property located at 19027 Hallbrook Court, Leesburg, VA  20176 ("the

Property")  and offers the following in support:

1.    Debtor is the sole owner of the Property.

2.    Debtor values the Property at $900,000.  Docket No. 1.

3.    The Property is encumbered by the following two liens:

(A)  A Deed of Trust in favor of Bank of America in the approximate amount of

$718,274.06. Claims Rgtr No. 5.

(B)  A tax lien in favor of the Internal Revenue Service in the amount of

$92,641.79.  Claims Rgtr No. 1.

4.    On or about April 12, 2012, Debtor entered into a Regional Sales Contract for the

sale of the property for $900,000.  Attached hereto as Exhibit A, and incorporated herein as if

stated in full, is a copy of such sales contract.

5.    Debtor estimates that after consideration for closing costs (estimated to be

$2,000), real estate agent commissions (estimated to be $49,500 based on 5.5% commission

rate), and payoff of the two liens, there will be approximately $43,500 potentially available for

the bankruptcy estate.  Attached hereto as Exhibit B and incorporated herein as if stated in full is

the Real Estate Listing Agreement entered into by Debtor and his real estate agent.

6.     Per the Regional Sales Contract, the closing of the sale is to take place at Highland Title of Ashburn on or before August 31, 2012.   As Debtor intends to have the proceeds of the sale benefit his bankruptcy estate, Debtor agrees that Highland Title of Ashburn should disburse all such proceeds directly to the Chapter 13 Trustee and not Debtor.

7.     The property, however, is also subject to a  April 17, 2012 Pendente Lite Order issued by the Circuit Court of Loudoun County (the county in which the property sits) enjoining Debtor "from transferring, disposing, or selling any of the parties' marital assets" including the Property.  Attached hereto as Exhibit C and incorporated herein as if stated in full is a copy of the Pendente Lite Order.  There is a hearing set for July 10th, 2012, where it is expected that the Circuit Court will resolve the support matter and lift the Pendente Lite Order.

8.     It should also be noted, that the sale of the real property is conditioned on four "buyer's" contingencies: a financing contingency, an appraisal contingency, a home inspection contingency, and a HOA/CCR review contingency.  And thus it is possible that one of these contingencies may frustrate the sale of the Property.

9.     Should this sale not go through, for whatever reason, Debtor will seek this Court's approval for any subsequent sale or purchase offer.

10.     This sale does not include nor contemplate the sale of any personally identifiable information of any person.

11.     It is in the best interest of the Debtor's bankruptcy estate to allow the sale to proceed as it will pay in full Bank of America's ~$719,000 promissory note as well as the

Internal Revenue Service's secured tax claim (which is also a priority claim); the remaining proceeds of the sale will then be available for distribution to Debtor's unsecured claims upon the confirmation of Debtor's plan.

      **12.**    Debtor also requests that the Court waive 14 day Stay of Order as provided in Rule 6004(h).

      WHEREFORE the Debtor respectfully request that the Court APPROVE the proposed sale.

      Dated this 19th day of June, 2012.

THE LAW OFFICES OF D. BLAIR CLARK, PLLC

By: _/s/ Jeffrey P. Kaufman_____
        Jeffrey P. Kaufman

**12-01243-TLM | PATRICK MOONEY**
**MOTION TO SELL REAL ESTATE**                                   **PAGE 4**
M:\MB\mbwork\Blair\Mooney- Patrick\Mtn. to sell Real Property.wpd

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on this 19th day of June, 2012, I filed the foregoing electronically through the CM/ECF system, which caused the following parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

Office of the United States Trustee
ustp.region18.bs.ecf@usdoj.gov

Kathleen A. McCallister, Chapter 13 Trustee
kamccallister@qwestoffice.net

I further certify that on such date I served the foregoing on the following non CM/ECF Registered Participants in the manner indicated:

Via first class mail, postage prepaid addressed as follows:

**All other parties on the attached mailing matrix**

Via certified mail, return receipt requested, addressed as follows:

**None**

LAW OFFICE OF D. BLAIR CLARK, PLLC

By:  /s/ *Jeffrey P. Kaufman*
        Jeffrey P. Kaufman

Label Matrix for local noticing
0976-1
Case 12-01243-TLM
District of Idaho  [LIVE]
Boise
Tue Jun 19 16:37:01 MDT 2012

ADT Security
PO Box 650485
Dallas, TX 75265-0485

American Express
P.O. Box 0001
Los Angeles, CA 90096-0001

Bank Of America, N.A.
450 American St
Simi Valley, CA 93065-6285

Bank of America, N.A.
13555 SE 36th St., Suite 300,
Bellevue, WA 98006-1489

Bank of America, N.A.
P. O. Box 660933
Dallas, TX 75266-0933

Barclay Card Services
PO BOX 13337
Philadelphia, PA 19101-3337

Beau Brazier
1415 W Fort St.
Boise, ID 83702-5006

Charles Hunter
1588 Eaton Way
Annapolis, MD 21401-6430

Citibank, N.A.
13555 SE 36th St., Suite 300,
Bellevue, WA 98006-1489

(p)DISCOVER FINANCIAL SERVICES LLC
PO BOX 3025
NEW ALBANY OH 43054-3025

First Pryority Bank
PO Box 218
Pryor, OK 74362-0218

Gap
P.O. Box 530993
Atlanta, GA 30353-0993

(p)INTERNAL REVENUE SERVICE
CENTRALIZED INSOLVENCY OPERATIONS
PO BOX 7346
PHILADELPHIA PA 19101-7346

Internal Revenue Service
PO BOX 7346
Philadelphia, PA 19101-7346

JC Penneys
P.O. Box 960090
Orlando, FL 32896-0090

Juilington Creek Plantation
Attn: Richard Kelly
1637 Race Track Road
Saint Johns, FL 32259-3239

Jeffrey Philip Kaufman
Law Office of D. Blair Clark, PLLC
1513 Tyrell Lane
Suite 130
Boise, ID 83706-4255

Kohls
Payment Center
PO BOX 30510
Los Angeles, CA 90030-0510

Brian R Langford
Routh Crabtree Olsen, P.S.
300 Main St., Suite 150
Boise, ID 83702-7728

Lynn M. Zdanovec
19027 Hallbrook Ct
Leesburg, VA 20176-1632

Macys
PO Box 689195
Des Moines, IA 50368-9195

Kathleen A. McCallister
POB 1150
Meridian, ID 83680-1150

James K Miersma
13555 SE 36th St., Suite 300
Bellevue, WA 98006-1489

Patrick Joseph Mooney
1415 1/2 W. Fort Street
Boise, ID 83702-5006

Orange Lake Country Club, Inc.
8505 W. Irlo Bronson Memorial Hwy.
Kissimmee, FL 34747-8201

Pentagon Federal Cr Un
Po Box 1432
Alexandria, VA 22313-1432

Sears Credit Cards
PO BOX 688956
Des Moines, IA 50368-8956

St. Johns County Tax Collect
PO Box 9001
Saint Augustine, FL 32085-9001

TJ MAXX
770 Cochituate Road
Framingham, MA 01701-4698

Target Credit Card
PO Box 673
Minneapolis, MN 55440-0673

US Trustee
Washington Group Central Plaza
720 Park Blvd, Ste 220
Boise, ID 83712-7785

(p)VIRGINIA DEPARTMENT OF TAXATION
P O BOX 2156
RICHMOND VA 23218-2156

Wendy Sutton
18992  Coreopsis Terace
Leesburg, VA 20176-8462

Wilson Resort Finance
8505 Irlo Bronson Memorial
Kissimmee, FL 34747-8217

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Discover Card
P.O. Box 15192
Wilmington, DE 19850-5192

Internal Revenue Service
400 North 8th Street
Richmond, VA 23219

(d)Internal Revenue Service
550 W. Fort St.
Boise, ID 83724

Virginia Dept of Taxation
Office of Customer Service
PO Box 1115
Richmond, VA 23218-1115

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Bank of America, N.A.

(d)Bank of America, N.A.
13555 SE 36th St., Suite 300,
Bellevue, WA 98006-1489

(u)CitiBank, N.A.

(u)Terry L Myers

End of Label Matrix
Mailable recipients    34
Bypassed recipients     4
Total                  38

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005D63B0D1

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

## REGIONAL SALES CONTRACT

**Century 21**
Redwood Realty

This SALES CONTRACT ("Contract") is made on __**April 12, 2012**__ ("Contract Date") between __**Wendy Sutton**__ ("Purchaser") and __**Patrick J Mooney**__ ("Seller") who, among other things, hereby confirm and acknowledge by their initials and signatures herein that by prior disclosure in this real estate transaction __**Keller Williams Realty**__ ("Listing Company") represents Seller, and __**Century 21 Redwood Realty**__ ("Selling Company") represents [X] Purchaser OR [ ] Seller. The Listing Company and Selling Company are collectively referred to as "Broker." (If the brokerage firm is acting as a dual representative for both Seller and Purchaser, then the appropriate disclosure form is attached and made a part of this Contract.) In consideration of the mutual promises and covenants set forth below, and other good and valuable consideration the receipt and sufficiency of which are acknowledged, the parties agree as follows:

1. **REAL PROPERTY** Purchaser will buy and Seller will sell for the sales price ("Sales Price"), Seller's entire interest in the real property (with all improvements, rights and appurtenances) described as follows ("Property"):
TAX Map/ID # __**081283873000**__ Legal Description: Lot(s) __**121**__ Block/Square ____
Section __**3**__ Subdivision or Condominium __**Lansdowne on the Potomac**__
Parking Space(s) # ____ County/Municipality __**Loudoun**__
Deed Book/Liber # ____ Page/Folio # ____
Street Address __**19027 Hallbrook Court**__
Unit # ____ City __**Leesburg**__ State __**VA**__ Zip Code __**20176**__

2. **JURISDICTIONAL ADDENDUM** The following Jurisdictional Addendum, if ratified and attached, is made a part of this Contract. Jurisdictional Addendum for [ ] DC [X] VA [ ] MD/County: __**Loudoun**__
[ ] Other: ____

3. **PRICE AND FINANCING**
   **A. Down Payment** $ __160,000.00__
   **B. Financing**  1. First Trust (if applicable) $ __740,000.00__
   2. Second Trust (if applicable) $ ____
   3. Seller Held Trust $ ____
   Addendum attached (if applicable)
   **TOTAL FINANCING** $ __740,000.00__
   **SALES PRICE** $ __900,000.00__

   **C. First Deed of Trust** Purchaser will [X] Obtain OR [ ] Assume a [X] Fixed OR an [ ] Adjustable rate First Deed of Trust loan of the following type:
   [X] Conventional  See Addendum Attached  [ ] VA  See Addendum Attached
   [ ] FHA  See Addendum Attached  [ ] Other: ____
   [ ] This contract is not contingent on Financing.

   **D. Second Deed of Trust** Purchaser will [ ] Obtain OR [ ] Assume a [ ] Fixed OR an [ ] Adjustable rate Second Deed of Trust loan.

   **E. Assumption Only** Assumption fee, if any, and all charges related to the assumption will be paid by the Purchaser. If Purchaser assumes Seller's loan(s): (i) Purchaser and Seller [ ] will, OR [ ] will not obtain a release of Seller's liability to the U.S. Government for the repayment of the loan by Settlement, (ii) Purchaser and Seller [ ] will, OR [ ] will not obtain substitution of Seller's VA entitlement by Settlement. Balances of any assumed loans, secondary financing and cash down payments are approximate.

NVAR – K1321 – Rev 01/12                    Page 1 of 8              Initials: Seller____ Purchaser____

CENTURY 21 Redwood Realty - Ashburn office 44075 Pipeline Plaza, Ste 225 Ashburn, VA 20147
Phone: 703-728-4193       Fax: 866-459-2761       Dawn Tollus
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Wendy Sutton

**Ex. A**

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B0B80ED

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

4. **DEPOSIT** Purchaser has delivered a deposit ("Deposit") to _____ **Century 21 Redwood Realty** ("Escrow Agent") of [x] $ **9,000.00** _____ check and/or [ ] $ _____ by note due and payable on _____

The Deposit will be placed in an escrow account of the Escrow Agent after Date of Ratification in conformance with the laws and regulations of the appropriate jurisdiction and/or, if VA financing applies, as required by Title 38 of the U.S. Code. This account may be interest bearing and all parties waive any claim to interest resulting from the Deposit. The Deposit will be held in escrow until: (i) Credited toward the Sales Price at Settlement; (ii) All parties have agreed in writing as to its disposition; (iii) A court of competent jurisdiction orders disbursement and all appeal periods have expired; or, (iv) Disposed of in any other manner authorized by the laws and regulations of the appropriate jurisdiction. Seller and Purchaser agree that Escrow Agent will have no liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except in the event of the Escrow Agent's gross negligence or willful misconduct.

5. **DOWN PAYMENT** The balance of the down payment will be paid on or before the Settlement Date by certified or cashier's check or by bank-wired funds. An assignment of funds shall not be used without prior written consent of Seller.

6. **SETTLEMENT** Seller and Purchaser will make full settlement in accordance with the terms of this Contract ("Settlement") on, or with mutual consent before, _____ **August 31** , **2012** ("Settlement Date") except as otherwise provided in this Contract. Purchaser selects: **Highland Title of Ashburn** _____ _____ ("Settlement Agent") to conduct the Settlement. (For transactions in Virginia, use the Virginia Jurisdictional Addendum to select the Settlement Agent.) Either party may retain their own legal counsel. Purchaser agrees to contact the Settlement Agent within 10 Days after the Date of Ratification to schedule Settlement and to arrange for ordering the title exam and, if required, a survey.

7. **PROPERTY MAINTENANCE AND CONDITION** Except as otherwise specified herein, Seller will deliver the Property free and clear of trash and debris, broom clean and in substantially the same physical condition to be determined as of [x] Contract Date OR [ ] Date of home inspection OR [ ] Other: _____ . Seller will have all utilities in service through Settlement or as otherwise agreed. Purchaser and Seller will not hold the Broker liable for any breach of this paragraph.

Purchaser acknowledges, subject to Seller acceptance, that this Contract may be contingent upon home inspection(s) and/or other inspections to ascertain the physical condition of the Property. If Purchaser desires one or more inspection contingencies, such contingencies must be included in an addendum to this Contract.
[x] This Contract is contingent upon home inspection(s) and/or other inspections. (Addendum Attached)
OR
[ ] Purchaser declines the opportunity to make this Contract contingent upon home inspection(s) and/or other inspections.

Purchaser acknowledges that except as otherwise specified in this Contract, the Property, including electrical, plumbing, existing appliances, heating, air conditioning, equipment and fixtures shall convey in its AS-IS condition as of the date specified above.

8. **ACCESS TO PROPERTY** Seller will provide the Broker, Purchaser, inspectors representing Purchaser and representatives of lending institutions for Appraisal purposes reasonable access to the Property to comply with this Contract. In addition, Purchaser and/or Purchaser's representative will have the right to make a final inspection within 5 days prior to Settlement and/or occupancy, unless otherwise agreed to by Purchaser and Seller.

9. **UTILITIES WATER, SEWAGE, HEATING AND CENTRAL AIR CONDITIONING** (Check all that apply)
Water Supply: [x] Public [ ] Private Well [ ] Community Well
Sewage Disposal: [x] Public [ ] Septic for # BR _____ [ ] Community Septic [ ] Alternative Septic for # BR: _____
Hot Water: [ ] Oil [x] Gas [ ] Elec. [ ] Other _____

NVAR – K1321 – Rev 01/12            Page 2 of 8            Initials: Seller _____ Purchaser _____

Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B9390D1

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

Air Conditioning: ☐ Oil   ☐ Gas   ☒ Elec.   ☐ Heat Pump   ☐ Other _____   ☐ Zones _____
Heating:          ☐ Oil   ☒ Gas   ☐ Elec.   ☐ Heat Pump   ☐ Other _____   ☒ Zones _____

**10. PERSONAL PROPERTY AND FIXTURES** The Property includes the following personal property and fixtures, if existing: built-in heating and central air conditioning equipment, plumbing and lighting fixtures, sump pump, attic and exhaust fans, storm windows, storm doors, screens, installed wall-to-wall carpeting, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices **DO NOT** convey. If more than one of an item convey, the number of items is noted.
**The items marked YES below are currently installed or offered.**

| Yes | No | # | Items | Yes | No | # | Items | Yes | No | # | Items |
|-----|----|---|-------|-----|----|---|-------|-----|----|---|-------|
| ☒ | ☐ | ___ | Alarm System | ☐ | ☒ | ___ | Freezer | ☐ | ☒ | ___ | Satellite Dish |
| ☒ | ☐ | ___ | Built-in Microwave | ☐ | ☒ | ___ | Furnace Humidifier | ☐ | ☒ | ___ | Storage Shed |
| ☒ | ☐ | ___ | Ceiling Fan | ☒ | ☐ | ___ | Garage Opener | ☐ | ☒ | ___ | Stove or Range |
| ☐ | ☒ | ___ | Central Vacuum | ☒ | ☐ | ___ | w/ remote | ☐ | ☒ | ___ | Trash Compactor |
| ☒ | ☐ | ___ | Clothes Dryer | ☒ | ☐ | ___ | Gas Log | ☐ | ☒ | ___ | Wall Oven |
| ☒ | ☐ | ___ | Clothes Washer | ☐ | ☒ | ___ | Hot Tub, Equip, & Cover | ☐ | ☒ | ___ | Water Treatment System |
| ☒ | ☐ | ___ | Cooktop | ☒ | ☐ | ___ | Intercom | ☐ | ☒ | ___ | Window A/C Unit |
| ☒ | ☐ | ___ | Dishwasher | ☐ | ☒ | ___ | Playground Equipment | ☐ | ☒ | ___ | Window Fan |
| ☒ | ☐ | ___ | Disposer | ☐ | ☒ | ___ | Pool, Equip & Cover | ☒ | ☐ | ___ | Window Treatments |
| ☒ | ☐ | ___ | Electronic Air Filter | ☒ | ☐ | ___ | Refrigerator | ☐ | ☒ | ___ | Wood Stove |
| ☒ | ☐ | ___ | Fireplace Screen/Door | ☒ | ☐ | ___ | w/ ice maker | | | | |

**OTHER** _____

_____

**LEASED ITEMS** Any leased items, systems or service contracts (including, but not limited to, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) **DO NOT** convey absent an express written agreement by Purchaser and Seller. The following is a list of the leased items within the Property:

_____

_____

_____

11. **FINANCING APPLICATION** If this Contract is contingent on financing, Purchaser will make written application for the Specified Financing and any lender required property insurance no later than 7 days after the Date of Ratification. Purchaser grants permission for the Selling Company and the lender to disclose to the Listing Company and the Seller general information available about the progress of the loan application and loan approval process. If Purchaser fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply. Seller agrees to comply with reasonable lender requirements, except as otherwise provided in the LENDER REQUIRED REPAIRS paragraph of the applicable financing contingency addendum.

12. **ALTERNATE FINANCING** Purchaser may substitute alternative financing and/or an alternative lender for Specified Financing provided: (a) Purchaser is qualified for alternative financing; (b) there is no additional expense to Seller; (c) the Settlement Date is not delayed; and (d) if Purchaser fails to settle except due to any Default by Seller, then the provisions of the DEFAULT paragraph shall apply.

13. **PURCHASER'S REPRESENTATIONS** Purchaser ☒ will, OR ☐ will not occupy the Property as Purchaser's principal residence. **Unless specified in a written contingency, neither this Contract nor the financing is dependent or contingent on the sale and settlement or lease of other real property.** The Selling Company ☐ is, OR ☒ is not authorized to disclose to the Listing Company, Seller and any lender the appropriate financial or credit information statement provided to the Selling Company by Purchaser. Purchaser acknowledges that Seller is relying upon all of Purchaser's representations, including without limitation, the accuracy of financial or credit information given to Seller, Broker or the lender by Purchaser.

NVAR – K1321 – Rev 01/12                    Page 3 of 8            Initials: Seller _____  Purchaser _____

Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B93B0D1

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

14. **TERMITE INSPECTION** The ☐ **Purchaser at Purchaser's expense** OR ☒ **Seller at Seller's expense**, will furnish a written report from a pest control firm dated not more than 30 days prior to Settlement showing that all dwelling(s) and/or garage(s) within the Property (excluding fences or shrubs not abutting garage(s) or dwelling(s)) are free of visible evidence of active termites and other wood-destroying insects, and free from visible insect damage. Any extermination and repairs for damage identified in the inspection report will be made at Seller's expense.

15. **DAMAGE OR LOSS** The risk of damage or loss to the Property by fire, act of God, or other casualty remains with Seller until the execution and delivery of the deed of conveyance to Purchaser at Settlement.

16. **TITLE** The title report and survey, if required, will be ordered promptly and, if not available on the Settlement Date, then Settlement may be delayed for up to 10 business days to obtain the title report and survey after which this Contract, at the option of Seller, may be terminated and the Deposit will be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph. Fee simple title to the Property, and everything that conveys with it, will be sold free of liens except for any loans assumed by Purchaser. Title is to be good and marketable, and insurable by a licensed title insurance company with no additional risk premium. Title may be subject to commonly acceptable easements, covenants, conditions and restrictions of record, if any; otherwise, Purchaser may declare this Contract void, unless the defects are of such character that they may be remedied within 30 Days beyond the Settlement Date. In case action is required to perfect the title, such action must be taken promptly by Seller at Seller's expense. The Broker is hereby expressly released from all liability for damages by reason of any defect in the title. Seller will convey the Property by general warranty deed with English covenants of title (Virginia); general warranty deed (West Virginia); special warranty deed (D.C. and Maryland) ("Deed"). Seller will sign such affidavits, lien waivers, tax certifications, and other documents as may be required by the lender, title insurance company, Settlement Agent, or government authority, and authorizes the Settlement Agent to obtain pay-off or assumption information from any existing lenders. The manner of taking title may have significant legal and tax consequences. Purchaser is advised to seek the appropriate professional advice concerning the manner of taking title. Unless otherwise agreed to in writing, Seller will pay any special assessments and will comply with all orders or notices of violations of any county or local authority, condominium unit owners' association, homeowners' or property owners' association or actions in any court on account thereof, against or affecting the Property on the Settlement Date.

17. **POSSESSION DATE** Unless otherwise agreed to in writing between Seller and Purchaser, Seller will give possession of the Property at Settlement, including delivery of keys, if any. If Seller fails to do so and occupies the Property beyond Settlement, Seller will be a tenant at sufferance of Purchaser and hereby expressly waives all notice to quit as provided by law. Purchaser will have the right to proceed by any legal means available to obtain possession of the Property. Seller will pay any damages and costs incurred by Purchaser including reasonable attorney fees.

18. **FEES** Fees for the preparation of the Deed, that portion of the Settlement Agent's fee billed to Seller, costs of releasing existing encumbrances, Seller's legal fees and any other proper charges assessed to Seller will be paid by Seller. Fees for the title exam (except as otherwise provided), survey, recording (including those for any purchase money trusts) and that portion of the Settlement Agent's fee billed to Purchaser, Purchaser's legal fees and any other proper charges assessed to Purchaser will be paid by Purchaser. Fees to be charged will be reasonable and customary for the jurisdiction in which the Property is located. (Recording, Transfer and Grantor's Taxes are covered in the appropriate jurisdictional addenda.)

19. **BROKER'S FEE** Seller irrevocably instructs the Settlement Agent to pay the Broker compensation ("Broker's Fee") at Settlement as set forth in the listing agreement and to disburse the compensation offered by the Listing Company to the Selling Company in writing as of the Contract Date, and the remaining amount of Broker's compensation to the Listing Company.

20. **ADJUSTMENTS** Rents, taxes, water and sewer charges, front foot benefit and house connection charges, condominium unit owners' association, homeowners' and/or property owners' association regular periodic assessments (if any) and any other operating charges, are to be adjusted to the day of Settlement. Any heating or cooking fuels remaining in supply tank(s) at Settlement will become the property of Purchaser, unless leased. Taxes, general and special, are to be adjusted according to the certificate of taxes issued by the collector of taxes, if any, except that

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B93290D

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

recorded assessments for improvements completed prior to Settlement, whether assessments have been levied or not, will be paid by Seller or allowance made at Settlement. If a loan is assumed, interest will be adjusted to the Settlement Date and Purchaser will reimburse Seller for existing escrow accounts, if any.

21. **ATTORNEY'S FEES**

A. If any Party breaches this Agreement and a non-breaching Party retains legal counsel to enforce its rights hereunder, the non-breaching Party shall be entitled to recover against the breaching Party, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto. Should any tribunal of competent jurisdiction determine that more than one party to the dispute has breached this Agreement, then all such breaching Parties shall bear their own costs, unless the tribunal determines that one or more parties is a "Substantially Prevailing Party", in which case any such Substantially Prevailing Party shall be entitled to recover from any of the breaching parties, in addition to any other damages recoverable against any breaching Party, all of its reasonable Legal Expenses incurred in enforcing its rights under this Agreement, whether or not suit is filed, and in obtaining, enforcing and/or defending any judgment related thereto.

B. In the event a dispute arises resulting in the Broker (as used in this paragraph to include any agent, licensee, or employee of the Broker) being made a party to any litigation by the Purchaser or by the Seller, the Parties agree that the Party who brought the Broker into litigation shall indemnify the Broker for all of its reasonable Legal Expenses incurred, unless the litigation results in a judgment against the Broker.

22. **PERFORMANCE** Delivery of the required funds and executed documents to the Settlement Agent will constitute sufficient tender of performance. Funds from this transaction at Settlement may be used to pay off any existing liens and encumbrances, including interest, as required by lender(s) or lienholders.

23. **DEFAULT** If Purchaser fails to complete Settlement for any reason other than Default by Seller, at the option of Seller, the Deposit may be forfeited as liquidated damages (not as a penalty) in which event Purchaser will be relieved from further liability to Seller. If Seller does not elect to accept the Deposit as liquidated damages, the Deposit may not be the limit of Purchaser's liability in the event of a Default. If the Deposit is forfeited, or if there is an award of damages by a court or a compromise agreement between Seller and Purchaser, the Broker may accept and Seller agrees to pay the Broker one-half of the Deposit in lieu of the Broker's Fee, (provided Broker's share of any forfeited Deposit will not exceed the amount due under the listing agreement). If Seller fails to perform or comply with any of the terms and conditions of this Contract or fails to complete Settlement for any reason other than Default by Purchaser, Purchaser will have the right to pursue all legal or equitable remedies, including specific performance and/or damages. If either Seller or Purchaser refuses to execute a release of Deposit ("Release") when requested to do so in writing and a court finds that such party should have executed the Release, the party who so refused to execute the Release will pay the expenses, including, without limitation, reasonable attorney's fees, incurred by the other party in the litigation. Seller and Purchaser agree that no Escrow Agent will have any liability to any party on account of disbursement of the Deposit or on account of failure to disburse the Deposit, except only in the event of the Escrow Agent's gross negligence or willful misconduct. The parties further agree that the Escrow Agent will not be liable for the failure of any depository in which the Deposit is placed and that Seller and Purchaser each will indemnify, defend and save harmless the Escrow Agent from any loss or expense arising out of the holding, disbursement or failure to disburse the Deposit, except in the case of the Escrow Agent's gross negligence or willful misconduct. If either Purchaser or Seller is in default, then in addition to all other damages, the defaulting party will immediately pay the costs incurred for the title examination, Appraisal, survey and the Broker's Fee in full.

24. **OTHER DISCLOSURES Purchaser and Seller should carefully read this Contract to be sure that the terms accurately express their respective understanding as to their intentions and agreements. The Broker can counsel on real estate matters, but if legal advice is desired by either party, such party is advised to seek legal counsel. Purchaser and Seller are further advised to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters. The following provisions of this paragraph disclose some**

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B100528380DF

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

matters which the parties may investigate further. These disclosures are not intended to create a contingency. Any contingency must be specified by adding appropriate terms to this Contract. The parties acknowledge the following disclosures:

**A. PROPERTY CONDITION** Various inspection services and home warranty insurance programs are available. The Broker is not advising the parties as to certain other issues, including without limitation: water quality and quantity (including but not limited to, lead and other contaminants); sewer or septic; soil condition; flood hazard areas; possible restrictions of the use of the Property due to restrictive covenants, zoning, subdivision, or environmental laws, easements or other documents; airport or aircraft noise; planned land use, roads or highways; and construction materials and/or hazardous materials, including but without limitation flame retardant treated plywood (FRT), radon, urea formaldehyde foam insulation (UFFI), mold, polybutylene pipes, synthetic stucco (EIFS), underground storage tanks, Defective Chinese drywall, asbestos and lead-based paint. Information relating to these issues may be available from appropriate government authorities.

**B. LEGAL REQUIREMENTS** All contracts for the sale of real property must be in writing to be enforceable. Upon ratification and Delivery, this Contract becomes a legally binding agreement. Any changes to this Contract must be made in writing for such changes to be enforceable.

**C. FINANCING** Mortgage rates and associated charges vary with financial institutions and the marketplace. Purchaser has the opportunity to select the lender and the right to negotiate terms and conditions of the financing subject to the terms of this Contract. The financing may require substantial lump sum (balloon) payments on the due dates. Purchaser has not relied upon any representations regarding the future availability of mortgage money or interest rates for the refinancing of any such lump sum payments.

**D. BROKER** Purchaser and Seller acknowledge that the Broker is being retained solely as a real estate agent and not as an attorney, tax advisor, lender, appraiser, surveyor, structural engineer, mold or air quality expert, home inspector or other professional service provider. The Broker may from time to time engage in the general insurance, title insurance, mortgage loan, real estate settlement, home warranty and other real estate-related businesses and services. Therefore, in addition to the Broker's Fee specified herein, the Broker may receive compensation related to other services provided in the course of this transaction pursuant to the terms of a separate agreement/disclosure.

**E. PROPERTY TAXES** Your property tax bill could substantially increase following settlement. For more information on property taxes contact the appropriate taxing authority in the jurisdiction where the Property is located.

**F. PROPERTY INSURANCE** Obtaining property insurance is typically a requirement of the lender in order to secure financing. Insurance rates and availability are determined in part by the number and nature of claims and inquiries made on a property's policy as well as the number and nature of claims made by a prospective Purchaser. Property insurance has become difficult to secure in some cases. Seller should consult an insurance professional regarding maintaining and/or terminating insurance coverage.

**25. ASSIGNABILITY** This Contract may not be assigned without the written consent of Purchaser and Seller. If Purchaser and Seller agree in writing to an assignment of this Contract, the original parties to this Contract remain obligated hereunder until Settlement.

**26. DEFINITION**
A. "Appraisal" means a written appraised valuation of the Property.
B. "Day(s)" or "day(s)" means calendar day(s) unless otherwise specified in this Contract.
C. All reference to time of day shall refer to the time of day in the Eastern Time Zone of the United States.
D. For the purpose of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. If the Settlement Date falls on a Saturday, Sunday, or legal holiday, then the Settlement will be on the prior business day.

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B3B90D1

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

E. "Date of Ratification" means the date of final acceptance in writing by Purchaser and Seller, of all the terms of this Contract (not the date of expiration or removal of any contingencies).

F. For "Delivery" and "Notices" definitions, see appropriate Jurisdictional Addendum.

G. "Specified Financing" means the loan type(s) and amount(s), if any, specified in the PRICE AND FINANCING paragraph.

H. The masculine includes the feminine and the singular includes the plural.

I. "Possession Date" - See POSSESSION DATE paragraph.

J. "Legal Expenses" means attorney fees, court costs, and litigation expenses, if any, including, but not limited to, expert witness fees and court reporter fees.

27. **MISCELLANEOUS** This Contract may be signed in one or more counterparts, each of which is deemed to be an original, and all of which together constitute one and the same instrument. Documents obtained via facsimile machines will also be considered as originals. Typewritten or handwritten provisions included in this Contract will control all pre-printed provisions that are in conflict.

28. **VOID CONTRACT** If this Contract becomes void and of no further force and effect, without Default by either party, both parties will immediately execute a release directing that the Deposit be refunded in full to Purchaser according to the terms of the DEPOSIT paragraph.

29. **HOME WARRANTY** ☐ Yes OR ☒ No
Home Warranty Policy paid for and provided at Settlement by: ☐ Purchaser or ☐ Seller.
Cost not to exceed $ _____ . Warranty provider to be _____

30. **TIME IS OF THE ESSENCE AS TO ALL TERMS OF THIS CONTRACT.**

31. **ENTIRE AGREEMENT** This Contract will be binding upon the parties and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions not satisfied at Settlement will survive the delivery of the deed and will not be merged therein. This Contract, unless amended in writing, contains the final and entire agreement of the parties and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained. The interpretation of this Contract will be governed by the laws of the jurisdiction where the Property is located.

32. **ELECTRONIC SIGNATURES** In accordance with the Uniform Electronic Transactions Act (UETA) and the Electronic Signatures in Global and National Commerce Act, or E-Sign (the Act), and other applicable local or state legislation regarding Electronic Signatures and Transactions, the parties do hereby expressly authorize and agree to the use of electronic signatures as an additional method of signing and/or initialing this Contract. The parties hereby agree that either party may sign electronically by utilizing a digital signature service.

Seller: _____ / _____   Purchaser: _____ / _____

**SELLER:**

Date 4/16/12   Signature _____
Patrick J Mooney

**PURCHASER:**

Date 4/12/2012   Signature _____
Wendy Sutton

Date _____ / _____   Signature _____

Date _____ / _____   Signature _____

| Date of Ratification (see DEFINITIONS) |
|---|
| 4/1▢/2012 |

NVAR – K1321 – Rev 01/12

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Wendy Sutton

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

**************************************************************************************************

**For information purposes only:**

Listing Company's Name and Address:

**Keller Williams Realty**

**50 Catoctin Circle   Suite 101**
**Leesburg, VA   20176**

Office # (703) 599-1178      FAX # _____

MRIS Broker Code and Office ID _____

Agent Name **Jean Garrell**

_____

Real Estate License Number & Jurisdiction

Agent MRIS ID# _____

Team Leader/Agent **Jean Garrell**

Agent Email Address _____

Selling Company's Name and Address:

**Century 21 Redwood Realty**

**44075 Pipeline Plaza   Suite 215**
**Ashburn, VA   20147**

Office # (703) 728-4193      FAX # (866) 459-2761

MRIS Broker Code and Office ID **RDWG1**

Agent Name **Dawn Tollus**

_____

Real Estate License Number & Jurisdiction

Agent MRIS ID# **91888**

Team Leader/Agent **Dawn Tollus**

Agent Email Address **DawnTollus@yahoo.com**

 ©2012. This is a suggested form owned by certain REALTOR® Associations ("Associations"). This form has been created and printed exclusively for the use of REALTORS® and members of the Associations, who may copy or otherwise reproduce this form in identical form with the addition of their company logo and with any other changes being set forth in a clearly marked separate addendum. Any other use of this form is prohibited without prior written authorized consent of the Associations. 

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1003563807D

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

**CONVENTIONAL FINANCING ADDENDUM**

Century 21
Redwood Realty

This Addendum is made on _____ **April 12** _____, **2012** to a sales contract ("Contract") dated _____ **April 12** _____, **2012** between _____ **Wendy Sutton** _____ ("Purchaser") and _____ **Patrick J Mooney** _____ ("Seller") for the purchase and sale of the property ("Property"): **19027 Hallbrook Court, Leesburg, VA 20176** _____

1. **DEED OF TRUST**
   A. **First Deed of Trust** Purchaser will [X] Obtain OR [ ] Assume a [X] Fixed OR an [ ] Adjustable rate First Deed of Trust loan in the amount of $ **720,000.00** amortized over **30** years. The interest rate for this loan is at an (initial) interest rate not to exceed **4.000** % per year. Purchaser shall pay upfront and monthly mortgage insurance premiums as required by Lender guidelines.
   B. **Second Deed of Trust** Purchaser will [ ] Obtain OR [ ] Assume a [ ] Fixed OR an [ ] Adjustable rate Second Deed of Trust loan in the amount of $ _____ amortized over _____ years. The interest rate for this loan is at an (initial) interest rate not to exceed _____ % per year. Purchaser shall pay upfront and monthly mortgage insurance premiums as required by Lender guidelines.

2. **FINANCING CONTINGENCY**
   A. This Contract is contingent until 9 p.m. _____ **July 31, 2012** _____ ("Financing Deadline") upon Purchaser obtaining and delivering to Seller a written commitment or commitments, as the case may be, for the financing described in Paragraph 1 of this Addendum. Purchaser agrees to make written application for such financing (including the payment of any required fees) within 7 days of the Date of Ratification and to diligently pursue obtaining a commitment for such financing.
   B. If this contingency has not been satisfied by the Financing Deadline, this contingency will continue up to and including the Settlement Date, unless Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If Seller Delivers such Notice, this Contract will become void at 9 p.m. on the third Day following Delivery of Seller's Notice unless, prior to that date and time, Purchaser Delivers to Seller the written commitment or a Notice removing this contingency and evidence of the availability of funds necessary to settle without such financing.
   C. This Contract will become void if, prior to satisfaction of this contingency, Purchaser receives a written rejection from the lender or lenders to whom the Purchaser has applied pursuant to Paragraph 2.A. for the Specified Financing and Delivers a copy of the written rejection to Seller on or before the Settlement Date.
   D. Purchaser will be in Default whether or not the Financing Contingency has been removed if Settlement does not occur on the Settlement Date for any reason other than Default by Seller, including without limitation the following:
      1) Purchaser's failure to lock-in the interest rate(s) and the rate(s) increase so that Purchaser does not qualify for Specified Financing and/or Secondary Financing; OR
      2) Purchaser's failure to comply with Lender(s)'s reasonable requirements in a timely and diligent manner; OR
      3) Application is made with an alternative lender (one other than the lender who provided lender's letter) and the alternative lender fails to meet the Settlement Date; OR
      4) Purchaser does not have the down payment, closing fees and any other required funds, including without limitation, any additional funds required to be tendered by Purchaser if the Appraisal is lower than the Sales Price; OR
      5) Purchaser makes any deliberate misrepresentations, material omissions or inaccuracies in financial information that results in the Purchaser's inability to secure the financing; OR

NVAR - K1359 - rev. 01/12                    Page 1 of 3          Initials: Seller: _____    Purchaser: _____
CENTURY 21 Redwood Realty - Ashburn office 44075 Pipeline Plaza, Ste 225 Ashburn, VA 20147
Phone: 703-728-4193          Fax: 866-459-2761          Dawn Tollus                                          Wendy Sutton
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005368820A

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

6) Purchaser's failure to make application for property insurance, if required, by Lender(s) within 7 days of Date of Ratification; OR

7) Purchaser does or fails to do any act following the Date of Ratification that prevents Purchaser from completing Settlement.

3. **APPRAISAL CONTINGENCY** This Contract [X] IS CONTINGENT [ ] IS NOT CONTINGENT upon an Appraisal pursuant to this paragraph. Purchaser shall have until 9:00 p.m. _____**120**_____ Days (minimum of 21 days recommended) following the Date of Ratification to obtain an Appraisal ("Appraisal Deadline"). In the event that neither box is checked, this Contract is contingent upon an Appraisal pursuant to this paragraph and the Appraisal Deadline is the Financing Deadline set forth above. Purchaser shall provide Notice to Seller by the Appraisal Deadline, as follows:

A. The Appraisal is equal to or greater than the Sales Price. This contingency has been satisfied and removed. The parties shall proceed to Settlement; OR

B. The Appraisal is equal to or greater than the Sales Price. However, the Purchaser elects not to proceed with consummation of this Contract because the subject Property does not satisfy the Lender(s) requirements, the Property appraisal does not allow for the Specified Financing or the Property is inadequate collateral. Such Notice must be accompanied by a written denial of the financing showing written evidence of the Lender(s)'s decision concerning the Property. The Purchaser must provide such written evidence concurrently with the Purchaser's Notice of election not to proceed; OR

C. The Appraisal is not equal to or greater than the Sales Price and the Purchaser elects not to proceed with consummation of this Contract, unless the Seller elects to lower the Sales Price to the appraised value. It will be the Seller's option to lower the Sales Price to the appraised value and the parties shall proceed to Settlement at the lower Sales Price. If the Seller does not make this election, the parties may agree to mutually acceptable terms. Each election must be made by Notice within 3 Days after Notice from the other party. The parties will immediately sign any appropriate amendments. If the parties fail to agree, this Contract will become void; OR

D. The Purchaser elects to proceed with consummation of this Contract without regard to the Appraisal. The parties shall proceed to Settlement.

If Purchaser fails to give Seller Notice by the Appraisal Deadline, this contingency will continue, unless Seller at Seller's option gives Notice to Purchaser that this Contract will become void. If the Seller delivers such Notice, this Contract will become void at 9 p.m. on the third day following Delivery of the Seller's Notice, unless prior to such date and time the Purchaser delivers the required Notice.

4. **SELLER SUBSIDY/SELLER LOAN CHARGES** Seller will pay at Settlement $ **zero** _____ toward Purchaser's charges (including but not limited to loan origination fees, discount points, buy down or subsidy fees, prepaids or other charges) as allowed by Lender(s). It is Purchaser's responsibility to confirm with his Lender(s) that the entire credit provided herein may be utilized. If Lender(s) prohibits Seller from the payment of any portion of this credit, then said credit shall be reduced to the amount allowed by Lender(s).

5. **LENDER REQUIRED REPAIRS** If, as a condition of providing financing under this Contract, the Lender(s) requires repairs to be made to the Property, then Purchaser will give Notice to Seller of the Lender(s)'s required repairs. Within 5 Days after such Notice, Seller will give Notice to Purchaser as to whether Seller will make the repairs. If Seller will not make the repairs, Purchaser will give Notice

Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005A05B03B

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

to Seller within 5 Days after Seller's Notice as to whether Purchaser will make the repairs. If neither Seller nor Purchaser will make the repairs, then this Contract will become void. This clause will not release Seller from any responsibilities set forth in the paragraphs titled UTILITIES; PERSONAL PROPERTY AND FIXTURES; WELL AND SEPTIC; TERMITE INSPECTION; or any terms specifically set forth in this Contract and any addenda.

**SELLER:**                                         **PURCHASER:**

4/16/12 / [signature]                              04/12/2012 [signature]                    4/12/2012
Date        Signature                               Date        Signature
     **Patrick J Mooney**                                     **Wendy Sutton**

_____ / _____                      _____ / _____
Date        Signature                               Date        Signature




© 2012 Northern Virginia Association of REALTORS®, Inc.
This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B100E0850Pm

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622



# HOME INSPECTION AND RADON TESTING ADDENDUM

This Addendum is made on ____April 12, 2012____ to a Sales Contract ("Contract") dated ____April 12, 2012____
between _____Wendy Sutton_____ ("Purchaser") and
_____Patrick J Mooney_____ ("Seller") for the purchase and sale of
the Property: 19027 Hallbrook Court, Leesburg, VA 20176 .

1. **HOME INSPECTION** This Contract is contingent ("Home Inspection Contingency") until 9 p.m. ___10___ Days after the Date of Ratification ("Home Inspection Deadline") upon inspection ("Inspection") of the Property by a professional, insured inspector(s) at the Purchaser's discretion and expense. Pursuant to the terms of the Contract, the Seller will have all utilities in service. The Home Inspection Contingency will terminate at the Home Inspection Deadline unless by the Home Inspection Deadline the Purchaser has Delivered to the Seller a copy of the entire inspection report(s) and:

   A. A written Addendum of requested repair or replacement items. The Seller may, at the Seller's option, within ___3___ Days after Delivery of the addendum, elect in writing to remedy the deficiencies prior to Settlement. If the Seller does not elect to make the repairs or replacements, or makes a counter offer, or does not respond, the Purchaser will have ___2___ Days to respond or remove this Contingency and take the Property in its present physical condition or this contract will become void. Any counter-offer of Purchaser, and any subsequent counter-offer by either party, shall be responded to by the other party within ___2___ Days of Delivery of such counter offer. The failure of one party to respond to such counter-offer or to remove this Contingency within the required response period shall result in the Contract becoming void at the expiration of that response period **OR**

   B. A Notice voiding this Contract.

   If no Addendum or Notice is provided by the Deadline this contingency will expire and the Contract will remain in full force and effect with no contingency for Home Inspection.

2. **RADON TESTING** This Contract is contingent until 9 p.m. ___10___ Days after the Date of Ratification ("Deadline") upon the Purchaser, at the Purchaser's discretion and expense, having the Property inspected for the presence of radon by a testing firm ("Testing Firm") listed with the National Radon Safety Board ("NRSB"), or The National Environmental Health Association ("NEHA") using an U.S. Environmental Protection Agency ("EPA") approved testing method. Testing device to be placed and retrieved by an NRSB or NEHA listed technician. This contingency will terminate at the Deadline unless by the Deadline the Purchaser has Delivered to the Seller a copy of the radon testing report which confirms the presence of radon that equals or exceeds the action level established by the EPA together with either:

   A. A written addendum requiring the Seller at Seller's expense prior to Settlement to address the radon condition by contracting with an NRSB or NEHA listed remediation firm to reduce the presence of radon below the action level established by the EPA and by providing the Purchaser with written re-test results performed by a Testing Firm confirming such reduction of radon. The Seller may, at the Seller's option, within ___3___ Days after Delivery of the addendum, elect in writing to remedy the condition prior to Settlement.

   If the Seller does not elect to perform in accordance with the addendum, or makes a counter-offer, or does not respond, the Purchaser will have ___2___ Days after Delivery of Seller's counter-offer or the expiration of the period in which Seller had to respond, to respond or remove this Contingency and take the Property in its present physical condition or this Contract will become void. Any counter-offer of Purchaser, and any subsequent counter-offer by either party, shall be responded to by the other party within ___2___ Days of Delivery of such counter-offer. The failure of one party to respond to such counter-offer within the required response period shall result in the Contract becoming void at the expiration of that response period **OR**

   B. Notice voiding this Contract.

**SELLER:**                                              **PURCHASER:**

4/18/12  /  _____                     _____  /  _____   4/12/2012
Date         Signature                                   Date              Signature
             Patrick J Mooney                                              Wendy Sutton

_____  /  _____                     _____  /  _____
Date         Signature                                   Date              Signature

NVAR – K1342—01/12                    ©2012 NVAR, All Rights Reserved
CENTURY 21 Redwood Realty - Ashburn office 44075 Pipeline Plaza, Ste 225 Ashburn, VA 20147
Phone: 703-728-4193        Fax: 866-459-2761           Dawn Tollus                                      Wendy Sutton
                  Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B2B59D0

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622



## RESIDENTIAL PROPERTY DISCLOSURE STATEMENT

### NOTICE TO SELLER AND PURCHASER

> The Virginia Residential Property Disclosure Act (§ 55-517 et seq. of the Code of Virginia) requires the owner of certain residential real property, whenever the property is to be sold or leased with an option to buy, to furnish this form to the purchaser and to refer the purchaser to a Virginia Real Estate Board website for additional information.
>
> Certain transfers of residential property are excluded from this requirement (see § 55-518).

Property Address/ 19027 Hallbrook Court, Leesburg, VA  20176
Legal Description: _____

The owner makes no representations with respect to the matters set forth and described at the RESIDENTIAL PROPERTY DISCLOSURES web page. The purchaser is advised to consult the website (http://www.dpor.virginia.gov/dporweb/reb_consumer.cfm) for important information about the real property.

The undersigned owner(s) represents that there are no pending enforcement actions pursuant to the Uniform Statewide Building Code (§ 36-97 et seq.) that affect the safe, decent, and sanitary living conditions of the real property described above of which the owner has been notified in writing by the locality, nor any pending violation of the local zoning ordinance which the violator has not abated or remedied under the zoning ordinance, within a time period set out in the written notice of violation from the locality or established by a court of competent jurisdiction, except as disclosed on this statement.

_____
_____
_____
_____
_____
_____

The owner(s) acknowledge having carefully examined this statement and further acknowledge that they have been informed of rights and obligations under the Virginia Residential Property Disclosure Act.

| | | | |
|---|---|---|---|
| Owner | Date | Owner | Date |
| Patrick J Mooney | 4/16/12 | | |

The purchaser(s) acknowledge receipt of a copy of this disclosure statement and further acknowledge that they have been informed of their rights and obligations under the Virginia Residential Property Disclosure Act.

| | | | |
|---|---|---|---|
| Purchaser | Date | Purchaser | Date |
| Wendy Sutton | 4/12/2012 | | |

DPOR 7/11

CENTURY 21 Redwood Realty - Ashburn office 44075 Pipeline Plaza, Ste 225 Ashburn, VA 20147
Phone: 703-728-4193          Fax: 866-459-2761          Dawn Tollus
Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                    Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005D63B0D

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

# VIRGINIA JURISDICTIONAL ADDENDUM

This Addendum is made on _____ **April 12, 2012** _____, to a Sales Contract ("Contract")

dated _____ **April 12, 2012** _____ between

_____ **Wendy Sutton** _____ ("Purchaser")

whose address is: **18992 Coreopsis Terrace, Leesburg, VA   20176**

and _____ **Patrick J Mooney** _____ ("Seller")

whose address is: _____

for the purchase and sale of the Property: **19027 Hallbrook Court, Leesburg, VA   20176**

1. **DELIVERY The requirements for delivery of property or condominium owner's association documents are specified in the Virginia Property Owners' Association Act and/or Virginia Condominium Act paragraphs of this addendum. Delivery of the Notice pursuant to the Residential Property Disclosure Act is addressed in Paragraph 4.**

Delivery ("Delivery", "delivery", or "delivered") methods may include hand-carried, sent by professional courier service, by United States mail, or by facsimile or email transmission. The parties agree that Delivery will be deemed to have occurred: on the day delivered by hand, on the day delivered by a professional courier service (including overnight delivery service), or by United States mail, return receipt requested, or on the day sent by facsimile or email transmission, either of which produces a tangible record of the transmission.

Deliveries will be sent to the following:

**A.** Addressed to Seller **at the Property address unless otherwise specified below:**

By United States mail, hand delivery or courier service at _____

_____ **OR**

By facsimile to Seller at _____ **OR**

By email to Seller at _____ .

**B.** Addressed to Purchaser:

By United States mail, hand delivery or courier service at **18992 Coreopsis Terrace, Leesburg,**

**VA 20176** _____ **OR**

By facsimile to Purchaser at _____ **OR**

By email to Purchaser at _____ .

**COURTESY COPIES: Copies of any addenda, amendments, or Notices required by the Contract will also be provided as a courtesy to the Brokers at the following fax/mailing address/email address. The parties agree that such courtesy copies sent to the Broker will NOT constitute Delivery and that if a Broker is specified in A or B above then there is no need to Deliver the courtesy copy. This paragraph does not require items to be sent to the Broker twice.**

NVAR - K1345 - rev. 01/12                          Page 1 of 6          Initials: Seller ___/___    Purchaser ___/___

CENTURY 21 Redwood Realty - Ashburn office 44075 Pipeline Plaza, Ste 225 Ashburn, VA 20147
Phone: 703-728-4193          Fax: 866-459-2761          Dawn Tollus                          Wendy Sutton

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B3252D1

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8874BD6B622

Listing Company: **Keller Williams Realty, 50 Catoctin Circle, Suite 101, Leesburg, VA 20176**

Selling Company: **Century 21 Redwood Realty, 44075 Pipeline Plaza, Suite 215, Ashburn, VA 20147**

No party to this Contract will refuse Delivery in order to delay or extend any deadline established in the Contract.

**2. NOTICES** Notice ("Notice", "notice", or "notify") means a unilateral communication from one party to another. All Notices required under this Contract will be in writing and will be effective as of Delivery. For the purposes of computing time periods, the first Day will be the Day following Delivery and the time period will end at 9 p.m. on the Day specified. Written acknowledgment of receipt of Notice is a courtesy but is not a requirement.

**3. FINANCING** If this Contract is contingent upon financing, then the applicable Financing Addendum must be attached.

**4. VIRGINIA RESIDENTIAL PROPERTY DISCLOSURE ACT** The Virginia Residential Property Disclosure Act requires Seller to deliver a disclosure statement prior to the acceptance of this Contract unless the transfer of the Property is exempt. The law requires Seller, on a disclosure statement provided by the Real Estate Board, to state that Seller makes no representations or warranties concerning the physical condition of the Property and to sell the Property "as is", except as otherwise provided in this Contract.

If the disclosure statement is delivered to the Purchaser after the Date of Ratification, the Purchaser's sole remedy shall be to terminate the Contract at or prior to the earliest of (i) 3 days after delivery of the disclosure statement in person; (ii) 5 days after the postmark if the disclosure statement is sent by United States mail, postage prepaid, and properly addressed to the Purchaser; (iii) settlement upon purchase of the Property; (iv) occupancy of the Property by the Purchaser; (v) the Purchaser making written application to a lender for a mortgage loan where such application contains a disclosure that the right of termination shall end upon the application for the mortgage loan; or (vi) the execution by the Purchaser after receiving the disclosure statement of a written waiver of the Purchaser's right of termination separate from the Contract.

Written Notice of termination may be (i) hand delivered; (ii) sent by United States mail, postage prepaid, provided that Purchaser retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service confirming that such mailing was prepared by Purchaser; (iii) sent by electronic means to the facsimile number or electronic mailing address provided by Seller in the "Delivery" paragraph of this Addendum, provided that Purchaser retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service; (iv) overnight delivery using a commercial service or the United States Postal Service.

Any such termination shall be without penalty to the Purchaser, and any deposit shall be promptly returned to the Purchaser.

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B10058A3200A

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

**5. SMOKE DETECTORS** Seller shall deliver the Property with smoke detectors installed and functioning in accordance with the laws and regulations of the applicable jurisdiction.

**6. TARGET LEAD-BASED PAINT HOUSING** Seller represents that any residential dwellings at the Property ☐ were **OR** ☒ were not constructed before 1978. If the dwellings were constructed before 1978, unless exempt under 42 U.S.C. 4852d, the property is considered "target housing" under the statute and a copy of the "Sale: Disclosure and Acknowledgment of Information on Lead-Based Paint and/or Lead-Based Paint Hazards" has been attached and made a part of the Contract as required by law. Purchaser ☐ Yes **OR** ☐ No waives the right to a risk assessment or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards. If No, a copy of the "Sales Contract Addendum for Lead-Based Paint Testing" is attached to establish the conditions for a lead-based paint risk assessment or inspections.

**7. VIRGINIA PROPERTY OWNERS' ASSOCIATION ACT** Seller represents that the Property ☒ is **OR** ☐ is not located within a development that is subject to the Virginia Property Owner's Association Act ("POA Act"). The POA Act requires the Seller of a property within such a development to obtain an Association Disclosure Packet from the property owners' association and provide it to Purchaser. The information in the Association Disclosure Packet shall be current as of a date specified on the Association Disclosure Packet. For delivery of the Packet or the Notice of non-availability of the Packet, Purchaser chooses the following method:☐ hardcopy **OR** ☒ electronic at the following address: **18992 Coreopsis Terrace, Leesburg, VA 20176**

Purchaser may cancel the contract (a) within 3 days of the Date of Ratification if Purchaser receives the Association Disclosure Packet on or before the Date of Ratification, (b) within 3 days after receiving the Association Disclosure Packet by hand delivery, (c) within 3 days after receiving the Association Disclosure Packet electronically with a receipt to sender, or (d) within 6 days after the postmark date if the Association Disclosure Packet is mailed to Purchaser.

If the Association Disclosure Packet is not available, Purchaser may cancel the contract (a) within 3 days of the Date of Ratification if Purchaser receives notification that the Association Disclosure Packet will not be available on or before the Date of Ratification, (b) within 3 days after receiving notification that the Association Disclosure Packet will not be available by hand-delivery or electronic means, or (c) within 6 days after the postmark date of the mailed notification.

Purchaser may also cancel this Contract at any time prior to Settlement if Purchaser has not been notified that the Association Disclosure Packet will not be available and the Association Disclosure Packet is not delivered to Purchaser.

Written Notice of cancellation may be (i) hand delivered; (ii) sent by United States mail, postage prepaid, provided that Purchaser retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service confirming that such mailing was prepared by Purchaser; (iii) sent by electronic means to the facsimile number or electronic mailing address provided by Seller in the "Delivery" paragraph of this Addendum, provided that Purchaser retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service confirming that such electronic delivery was prepared by Purchaser, or (iv) by overnight delivery using a commercial service or the United States Postal Service.

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com

Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005DC9B0D0

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

Purchaser's failure to send Notice of cancellation within the allotted time frames shall extinguish Purchaser's rights to cancel the contract under the Virginia Property Owners' Association Act. Such cancellation shall be without penalty; this Contract shall become void, both parties shall promptly execute a release and the Deposit shall be refunded in full to Purchaser.

Purchaser, at Purchaser's expense, shall have the right to request that the association provide an update of the Association Disclosure Packet previously furnished, along with the assurance that there has been no material change, or if there have been material changes, a statement specifying such changes.

The right to receive the Association Disclosure Packet and to cancel this Contract terminates at Settlement.

**8. VIRGINIA CONDOMINIUM ACT**  Seller represents that the Property ☐ is **OR** ☒ is not a condominium unit. If the Property is a condominium unit, this Contract is subject to the Virginia Condominium Act which requires Seller to obtain from the condominium unit owners' association ("Unit Owners' Association") certain financial and other disclosures ("Resale Certificate") and provide it to Purchaser. If the required disclosures are not available on the Date of Ratification, Seller shall promptly request them from the Unit Owners' Association and provide them to Purchaser who shall acknowledge receipt in writing upon Delivery. The information contained in the Resale Certificate shall be current as of a date specified on the Resale Certificate. For delivery of the Certificate, Purchaser chooses the following method: ☐ hardcopy **OR** ☐ electronic at the following address: _____

Purchaser may cancel this Contract: (a) within 3 Days after the Contract Date, if Purchaser receives the Resale Certificate on or before the Date of Ratification; (b) within 3 Days after receiving the Resale Certificate if the Resale Certificate is delivered by hand or electronically with a receipt to sender; or (c) within 6 Days after the postmark date if the Resale Certificate is sent to Purchaser by United States mail, return receipt requested.

After receiving the Resale Certificate from Seller, Purchaser, at Purchaser's expense, may submit a copy of the Contract to the Unit Owners' Association along with a request for assurance from the Association that the information submitted in the Resale Certificate remains materially unchanged, or if there have been material changes, a statement specifying such changes.

Written Notice of cancellation may be (i) hand delivered; (ii) sent by United States mail, postage prepaid, provided that Purchaser retains sufficient proof of mailing, which may be either a United States postal certificate of mailing or a certificate of service confirming that such mailing was prepared by Purchaser; (iii) sent by electronic means to the facsimile number or electronic mailing address provided by Seller in the "Delivery" paragraph of this Addendum, provided that Purchaser retains sufficient proof of the electronic delivery, which may be an electronic receipt of delivery, a confirmation that the notice was sent by facsimile, or a certificate of service confirming that such electronic delivery was prepared by Purchaser, or (iv) by overnight delivery using a commercial service or the United States Postal Service.

Purchaser's failure to send Notice of cancellation within the allotted time frames shall extinguish Purchaser's rights to cancel the Contract under the Virginia Condominium Act. Such cancellation shall be without penalty; this Contract shall become void, both parties shall promptly execute a release and the Deposit shall be refunded in full to Purchaser.

NVAR - K1345 - rev. 01/12                 Page 4 of 6          Initials: Seller _____          Purchaser _____

Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026  www.zipLogix.com                    Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B38200A

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

The right to receive the Resale Certificate and to cancel this Contract terminates at Settlement.

**9. NOTICE TO PURCHASER REGARDING THE REAL ESTATE SETTLEMENT AGENTS ACT ("RESAA")**
**Choice of Settlement Agent:** You have the right to select a Settlement agent to handle the closing of this transaction. The Settlement agent's role in closing your transaction involves the coordination of numerous administrative and clerical functions relating to the collection of documents and the collection and disbursement of funds required to carry out the terms of the contract between the parties. If part of the purchase price is financed, your lender will instruct the Settlement agent as to the signing and recording of loan documents and the disbursement of loan proceeds. No Settlement agent can provide legal advice to any party to the transaction except a Settlement agent who is engaged in the private practice of law in Virginia and who has been retained or engaged by a party to the transaction for the purpose of providing legal services to that party.
**Variation by agreement:** The provisions of the Real Estate Settlement Agents Act may not be varied by agreement, and rights conferred by this chapter may not be waived. The Seller may not require the use of a particular settlement agent as a condition of the sale of the property.
**Escrow, closing and Settlement service guidelines:** The Virginia State Bar issues guidelines to help Settlement agents avoid and prevent the unauthorized practice of law in connection with furnishing escrow, Settlement or closing services. As a party to a real estate transaction, you are entitled to receive a copy of these guidelines from your Settlement agent, upon request, in accordance with the provisions of the Real Estate Settlement Agents Act.

Purchaser wishes to employ **Highland Title of Ashburn**
("Settlement Agent"). Purchaser agrees to contact the Settlement Agent within 10 Days of the Date of Ratification to schedule Settlement. Settlement Agent shall order the title exam and survey if required.

**10. NOTICE OF POSSIBLE FILING OF MECHANICS' LIEN** Code of Virginia Section 43-1 et seq. permits persons who have performed labor or furnished materials for the construction, removal, repair or improvement of any building or structure to file a lien against the property. This lien may be filed at any time after the work is commenced or the material is furnished, but not later than the earlier of (i) 90 Days from the last day of the month in which the lienor last performed work or furnished materials or (ii) 90 Days from the time the construction, removal, repair or improvement is terminated. AN EFFECTIVE LIEN FOR WORK PERFORMED PRIOR TO THE DATE OF SETTLEMENT MAY BE FILED AFTER SETTLEMENT. LEGAL COUNSEL SHOULD BE CONSULTED.

**11. ADDITIONAL FEES** Grantors tax shall be paid by Seller. Purchaser shall pay recording charges for the Deed and any purchase money trusts.

**12. ARBITRATION** Nothing in this Contract shall preclude arbitration under the Code of Ethics and Standards of Practice of the National Association of REALTORS®.

**13. REAL ESTATE LICENSED PARTIES** The parties acknowledge that _____
_____ is an ☐ active or ☐ inactive licensed real estate agent in ☐ DC ☐ MD
☐ VA ☐ WV ☐ Other and is either the ☐ Purchaser or ☐ Seller OR ☐ is related to one of the parties in this transaction.

NVAR - K1345 - rev. 01/12                   Page 5 of 6        Initial: Seller [signature]        Purchaser [initials]

Wendy Sutton

DocuSign Envelope ID: 37D319B9-9C93-457D-A53F-C8674BD6B622

**14. ADDITIONS** The following forms, if ratified and attached, are made a part of this Contract. (This list is not all inclusive of addenda that may need to be attached).

| | | | | | |
|---|---|---|---|---|---|
| ☐ Yes ☒ No | Lead Based Paint Inspection Contingency | | | | |
| ☒ Yes ☐ No | Home Inspection/Radon Testing Contingency | | | | |
| ☒ Yes ☐ No | Contingency and Clauses | ☐ Yes | ☒ No | Well and Septic Contingency |
| ☐ Yes ☒ No | Pre-Settlement Occupancy | ☐ Yes | ☒ No | Post-Settlement Occupancy |
| ☒ Yes ☐ No | Residential Property Disclosure | ☐ Yes | ☒ No | Lead Based Paint Disclosure |
| ☐ Yes ☒ No | FHA Home Inspection Notice | ☐ Yes | ☒ No | FHA Financing |
| ☒ Yes ☐ No | Conventional Financing | ☐ Yes | ☒ No | VA Financing |
| ☐ Yes ☒ No | Other (specify): _____ | | | | |

**15. OTHER TERMS**

All contingency timeframes to commence upon Purchasers viewing of the property and not more than 45 days prior to settlement date. Purchaser requests a response within 72 hours or this contract is void.

**SELLER:**

4/16/12 / _[signature]_
Date / Signature
Patrick J Mooney

_____ / _____
Date / Signature

**PURCHASER:**

04/12/2012 / _[signature]_     4/12/2012
Date / Signature
Wendy Sutton

_____ / _____
Date / Signature



© 2012 Northern Virginia Association of REALTORS®, Inc.

This is a suggested form of the Northern Virginia Association of REALTORS®, Inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.



Produced with zipForm® by zipLogix 18070 Fifteen Mile Road, Fraser, Michigan 48026   www.zipLogix.com                Wendy Sutton

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B100506380D

**Wendy Sutton**
**18992 Corporate Ter**
Leesburg, Virginia
571-333-1878

1905
66-1/510

4|12   2012

$ 9000.00

PAY TO THE
ORDER

Nine thousand dollars and 00/100

**Bank Of America**

Sutton

FOR

⑆051000017⑆ 004126335053⑈ 1905

DocuSign Envelope ID: C1F2ECE2-D5C6-41CE-801B-B1005B63B001



**FIRST SAVINGS MORTGAGE**
CORPORATION

## <u>Loan Pre-Approval Letter</u>

Date:          4/12/2012
Borrower(s):   WENDY A SUTTON

## *Congratulations!*

First Savings Mortgage Corporation (FSMC) is pleased to inform you that you are
pre-approved for the following mortgage financing:

| | |
|---|---|
| Sales Price: | $ 900,000.00 |
| 1st Trust Loan Amount: | $ 720,000.00 |
| 2nd Trust Loan Amount (if any): | $ 0.00 |
| Interest Rates and Points: | Market/As per lock-in agreements |

Purchaser's credit, income, asset, and liability information has been provided and
reviewed.

This loan pre-approval is conditioned upon receipt of a ratified contract, a
satisfactory appraisal; all required title documents, including a satisfactory title
binder; issuance of private mortgage insurance (if required); and must meet
agency condo requirements (if applicable).  Market conditions may alter program
and product offering.

Sincerely,

BRACKTON PRATT
BPRATT@FIRSTSAVINGS.COM
(703) 827-4648 (phone)
(703) 564-4746 (fax)

FIRST SAVINGS MORTGAGE CORPORATION
MORTGAGE BANKERS
8444 WESTPARK DRIVE
FOURTH FLOOR
MCLEAN VA 22102

FSMC reserves the right to declare this Commitment null and void if any representations made in the loan
pre-approval application are incorrect or there is any adverse change in credit, assets, outstanding
obligations, employment or security property prior to closing.  Loan pre-approval letter valid for 60 days from
date of issuance.

LOAN PRE-APPROVAL– 01/2010

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E3337D38970

# DISCLOSURE OF BROKERAGE RELATIONSHIP

## *THIS IS NOT A CONTRACT; IT DOES NOT CREATE AN OBLIGATION*

In connection with this transaction, whether purchase, sale, lease or option, the client of the Broker/Firm is: *(check one)*

☒ Seller        ☐ Buyer

☐ Lessor (Landlord)        ☐ Lessee (Tenant)

☐ Optionor        ☐ Optionee

The duties of real estate licensees in Virginia are set forth in Section 54.1-2130 et seq. of the Code of Virginia and in the regulations of the Virginia Real Estate Board. You should be aware that in addition to the information contained in this disclosure pertaining to brokerage relationships, there may be other information relative to the transaction which may be obtained from other sources. Each party should carefully read all documents to assure that the terms accurately express his or her understanding and intent. Licensees can counsel on real estate matters, but if legal or tax advice is desired, you should consult an attorney or a financial professional.

Patrick J Mooney
_____
PRINT NAME    Seller / Lessor / Optionor

11/4/2011     *Patrick J. Mooney*
_____
Date        Patrick J Mooney

_____
PRINT NAME    Seller / Lessor / Optionor

_____
Date

Keller Williams Realty
_____
Broker / Firm

_____
PRINT NAME    Buyer / Lessee / Optionee

_____
Date

_____
PRINT NAME    Buyer / Lessee / Optionee

_____
Date

Jean Garrell
_____
Sales Associate

NVAR – K1207 – rev. 10/00

**Ex. B**

# EXCLUSIVE RIGHT TO SELL LISTING AGREEMENT

This Exclusive Right to Sell Listing Agreement ("Agreement") is made on _____ October 28, 2011 _____,
by and between _____ Patrick J Mooney _____ ("Seller") and
_____ Keller Williams Realty _____ ("Broker").
( Insert Firm Name )

**1. APPOINTMENT OF BROKER.** In consideration of the services provided by Broker and described in this
Agreement, Seller hereby appoints Broker as Seller's sole and exclusive listing agent and grants Broker the
exclusive right to sell the real property described as follows ("Property"):

**2. PROPERTY.**

Street Address _____ 19027 Hallbrook Ct _____ Unit # _____
City _____ Leesburg _____, Virginia   Zip Code _____ 20176
TAX Map / ID# _____ 081283873000 _____ Parking Space(s) # _____
Legal Description: Lot(s) ____ 121 ____ Block/Square _____ Section ____ 3 ____ Phase _____
Subdivision or Condominium _____ lansdowne on the potomac _____ Storage Unit # _____
County / Municipality _____ Loudoun _____ Deed Book/Liber # _____ Page/Folio # _____
Historic District Designation _____

**3. PARTIES' CONTACT INFORMATION.**

**Seller**
Mailing Address: _____ same as above _____
City, State, and Zip Code: _____
Phone: (H) _____ (W) _____ (Cell) _____ (Fax) _____
Email: _____
SS# (optional) _____

**Broker**
Mailing Address: _____ 50 Catoctin Circle NE _____
City, State, and Zip Code: _____ Leesburg VA 20176 _____
Telephone: _____ 703-599-1178 _____
Email: _____ jean@garrellhomes.com _____ Fax: _____

**4. TERM OF AGREEMENT.** This Agreement shall commence when signed by all parties and shall expire at
11:59 PM on _____ August 30, 2012 _____ ("Listing Period"). If a
sales contract for the Property is ratified during the Listing Period which provides for a settlement date beyond
the Listing Period, this Agreement shall be extended automatically until final disposition of the sales contract.

**5. LISTING PRICE.** Seller instructs the Broker to offer the Property for sale at a selling price of
$ _____ , or such other price as later agreed upon by Seller, which price includes the
Broker's compensation. (Note: Broker does not guarantee that the Property will appraise or sell at the price
stated hereunder, nor does Broker guarantee any net amount Seller might realize from the sale of the
Property).

NVAR – K1336 – Rev. 07/09          Page 1 of 9          Please Initial: Seller _____

**6. CONVEYANCES.** The Property includes the following existing personal property and fixtures: any built-in heating and central air conditioning equipment, plumbing and lighting fixtures, storm windows, storm doors, screens, installed wall-to-wall carpeting, exhaust fans, window shades, blinds, window treatment hardware, smoke and heat detectors, TV antennas, exterior trees and shrubs. Unless otherwise agreed to in writing, all surface or wall mounted electronic components/devices DO NOT CONVEY. If more than one of an item convey, the number of items is noted.

The items marked YES below re currently installed or offered:

| Yes | No | # | Items | | Yes | No | # | Items | | Yes | No | # | Items |
|-----|----|----|-------|---|-----|----|----|-------|---|-----|----|----|-------|
| | ☒ | ___ | Alarm System | | | ☒ | ___ | Freezer | | | ☒ | ___ | Storage Shed |
| | ☒ | ___ | Attic Fan | | | ☒ | ___ | Furnace Humidifier | | ☒ | | ___ | Stove or Range |
| ☒ | | ___ | Built-in Microwave | | ☒ | | ___ | Garage Door Opener | | ☒ | | ___ | Sump Pump |
| ☒ | | ___ | Ceiling Fan | | ☒ | | ___ | w/ remote | | | ☒ | ___ | Trash Compactor |
| | ☒ | ___ | Central Vacuum | | ☒ | | ___ | Gas Log | | ☒ | | ___ | Wall Oven |
| ☒ | | ___ | Clothes Dryer | | | ☒ | ___ | Hot Tub, Equip & Cover | | | ☒ | ___ | Wastewater Ejector Pump |
| ☒ | | ___ | Clothes Washer | | | ☒ | ___ | Intercom | | | ☒ | ___ | Water Treat System |
| ☒ | | ___ | Cooktop | | | ☒ | ___ | Playground Equip | | | ☒ | ___ | Window A/C Unit |
| ☒ | | ___ | Dishwasher | | | ☒ | ___ | Pool, Equip & Cover | | | ☒ | ___ | Window Fan |
| ☒ | | ___ | Disposer | | ☒ | | ___ | Refrigerator | | | ☒ | ___ | Window Treatments |
| | ☒ | ___ | Electric Air Filter | | ☒ | | ___ | w/ ice maker | | | ☒ | ___ | Wood Stove |
| ☒ | | ___ | Fireplace Screen/Door | | | ☒ | ___ | Satellite Dish | | | | | |

**OTHER** _____
_____
_____

**AS IS ITEMS**
Seller does not warrant the condition or working order of the following items and/or systems:

_____
_____

**LEASED ITEMS, SYSTEMS AND/OR SERVICE CONTRACTS**

Any leased items, systems or service contracts (including, but not limited to, termite or pest control, home warranty, fuel tanks, water treatment systems, lawn contracts, security system monitoring, and satellite contracts) DO NOT CONVEY absent an express written agreement by Purchaser and Seller. The following is a list of the leased items within the Property:_____
_____

**7. HOMEOWNER WARRANTY**

Seller has the option to purchase a homeowner warranty, which can be in effect during the Listing Period and will transfer to the Buyer upon settlement. Seller should review the scope of coverage, exclusions and limitations.

Cost not to exceed $_____. Warranty provider to be_____ .

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E3337D0B339

**8. UTILITIES** (Check all that apply)
Water Supply:        ☒ Public       ☐ Private Well     ☐ Community Well
Sewage Disposal:    ☒ Public       ☐ Septic # BR:_____
Type of Septic System: ☐ Community ☐ Conventional ☐ Alternative ☐ Experimental

Seller represents that the septic system ☐ is **OR** ☒ is not operating under a waiver from the State Board of Health.

*Section 32.1-164:1 of the Code of Virginia requires Seller to disclose whether the onsite septic system serving the Property is operating under a waiver of repair and/or maintenance requirements imposed by the State Board of Health. If the septic system is operating pursuant to a waiver, then the Seller must provide the buyer with the "Disclosure Regarding Validity of Septic System Permit" prior to contract ratification. Such waiver is not transferable to the buyer.

Hot Water:        ☐ Oil ☒ Gas ☐ Elec.  ☐ Other_____  Number of Gallons_____
Air Conditioning: ☐ Oil ☐ Gas ☒ Elec.  ☐ Heat Pump ☐ Other_____ ☐ Zones_____
Heating:          ☐ Oil ☒ Gas ☐ Elec.  ☐ Heat Pump ☐ Other_____ ☐ Zones_____

## 9. BROKER DUTIES.

The Broker shall perform, and Seller hereby authorizes Broker to perform, the following duties. In performing these duties, the Broker shall exercise ordinary care, comply with all applicable laws and regulations and treat all parties honestly.

**A)** Broker shall protect and promote the interests of Seller and shall provide Seller with services consistent with the standards of practice and competence that are reasonably expected of licensees engaged in the business of real estate brokerage.

**B)** Broker shall use reasonable efforts and act diligently to seek buyers for the Property at the price and terms stated herein or otherwise acceptable to the Seller, to negotiate on behalf of the Seller and to assist in the consummation of the sale of the Property.

**C)** Broker shall market the Property, at Broker's discretion, including without limitation, use of the Property address, description, interior and exterior photographs in appropriate advertising mediums, such as publications, mailings, brochures and internet sites; provided, however, Broker shall not be obligated to continue to market the Property after the Seller has accepted an offer.

**D)** Broker shall make a blanket unilateral offer of cooperation and compensation to other brokers in any multiple listing service ("MLS") that the Broker deems appropriate. Broker shall disseminate information regarding the Property, including the entry date, listing price(s), final price and all terms, and expired or withdrawn status, by printed form and/or electronic computer service, which may include the internet, during and after the expiration of this agreement.

Upon full ratification of this Agreement, Broker shall enter the listing information into the MLS database:

☐ Within 48 hours (excluding weekends and holidays); **OR**
                    ☐BD
☒ On or before: _____

**E)** Broker shall install "For Sale" signs on the Property, as permitted.  Seller is responsible for clearly marking the location of underground utilities, equipment or other items that may be damaged by the placement of the sign.

**F)** Broker shall show the Property during reasonable hours to prospective buyers and shall accompany or accommodate, as needed, other real estate licensees, their prospective buyers, inspectors, appraisers, exterminators and other parties necessary for showings and inspections of the Property, to facilitate and/or consummate the sale of the Property. Broker shall install an electronic keybox on the Property to allow access and showings by real estate licensees who are authorized to use the electronic keybox system by area REALTOR® Associations.

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E33379206C9

G) Broker shall present all written offers or counteroffers to and from the Seller, in a timely manner, even if the Property is already subject to a ratified contract of sale, unless otherwise instructed by the Seller in writing.

H) Broker shall account, in a timely manner, for all money and property received in trust by Broker, in which the Seller has or may have an interest.

**10. CONFIDENTIAL INFORMATION** . Broker shall maintain the confidentiality of all personal and financial information and other matters identified as confidential by the client which were obtained by the Broker during the brokerage relationship, unless the client consents in writing to the release of such information or as otherwise provided by law. The obligation of Broker to preserve confidential information continues after termination of the brokerage relationship. Information concerning material defects about the Property is not considered confidential information.

**11. TYPES OF REAL ESTATE REPRESENTATION - DISCLOSURE AND INFORMED CONSENT.**

**Seller Representation** occurs by virtue of this Agreement with Seller's contract to use the Broker's services and may also include any cooperating brokers who act on behalf of the Seller as subagent of the Broker. (Note: Broker may assist a buyer or prospective buyer by performing ministerial acts that are not inconsistent with the Broker's duties as Seller's listing agent under this Agreement.)

**Buyer Representation** occurs when buyers contract to use the services of their own broker (known as a buyer representative) to act on their behalf.

**Designated Representation** occurs when a buyer and seller in one transaction are represented by different sales associate(s) affiliated with the same Broker. Each of these sales associates, known as a Designated Representative, represents fully the interests of a different client in the same transaction. Designated Representatives are not dual representatives if each represents only the buyer or only the seller in a specific real estate transaction. In the event of designated representatives, each representative shall be bound by client confidentiality requirements, set forth above. The Broker remains a dual representative.

[X] The Seller consents to designated representation **OR** [ ] The Seller does not consent to designated representation which means the Seller does not allow the Property to be shown to a buyer represented by this Broker through another Designated Representative associated with the firm. The Broker will notify other real estate licensees via the MLS whether the Seller consents or does not consent to Designated Representation.

**Dual Representation** occurs when the same Broker and the same sales associate(s) represent both the buyer and seller in one transaction. In the event of dual representation, the Broker shall be bound by confidentiality requirements for each client, as set forth above.

[X] The Seller consents to dual representation **OR** [ ] The Seller does not consent to dual representation, which means the Seller does not allow the Property to be shown to a buyer represented by this Broker through the same sales associate(s). The Broker will notify other real estate licensees via the MLS whether the Seller consents or does not consent to Dual Representation.

**Non-Agency** occurs when the real estate licensee does not represent either party and acts to facilitate the transaction by assisting the parties to reach an agreement, as an independent contractor and without being an advocate for the interest of either party. In the event of non-agency, the real estate licensee would not owe traditional fiduciary duties to the consumer, but would still owe the consumer duties imposed on all licensees by the Commonwealth of Virginia.

**12. BROKER COMPENSATION.**

**A. Payment.** The Seller shall pay the Broker in cash **total compensation** of _____ 5.5% _____ (Compensation) if, during the term of this Agreement, anyone produces a buyer ready, willing and able to buy the Property.

The Compensation is also earned if within _____ 90 _____ days after the expiration or termination of this Agreement, a contract is ratified with a ready, willing and able buyer to whom the Property had been shown

NVAR – K1336 – Rev. 06/08 Exclusive Right to Sell Listing Agreement          Page 4 of 9          Please Initial: Seller __DS__ / _____

P JM

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E3337B09879

during the term of this Agreement; provided, however, that the Compensation need not be paid if a contract is ratified on the Property while the Property is listed with another real estate company.

**B. Selling Broker.** The Broker shall offer a portion of the Compensation to the selling broker as indicated:

| | |
|---|---|
| Sub-Agency Compensation: | 0 |
| Buyer Agency Compensation: | 3% |
| Non-Agency Compensation: | 0 |

*Note: Compensation may be shown by a percentage of the gross selling price, a definite dollar amount or "N" for no compensation.*

*The Broker's compensation and the sharing of compensation between brokers are not fixed, controlled, recommended or suggested by any multiple listing service or Association of REALTORS®.*

**C. Retainer Fee.** The Broker acknowledges receipt of a retainer fee in the amount of _____ N/A _____ which ☐ shall, **OR** ☒ shall not be subtracted from the Compensation. The retainer is non-refundable and is earned when paid.

**D. Early Termination.** In the event Seller wishes to terminate this Agreement prior to the end of the Listing Period, without good cause, Seller shall pay Broker _____ N/A _____ ("Early Termination Fee") before Broker's execution of a written release.

**13. AUTHORIZATION TO DISCLOSE OTHER OFFERS.** In response to inquiries from buyers or cooperating brokers, Broker may not disclose, without the Seller's approval, the existence of other written offers on the property.

Seller ☐ does **OR** ☒ does not authorize the Broker and sales associate to disclose such information to buyers or cooperating brokers.

If the Seller does give such authorization, the Seller acknowledges that the Broker and sales associate (s) must disclose whether the offers were obtained by the listing agent, another member of the listing Broker's firm, or by a cooperating broker.

**14. COMPLIANCE WITH FAIR HOUSING LAWS** . This Property shall be shown and made available without regard to race, color, religion, sex, handicap, familial status or national origin as well as all classes protected by the laws of the United States, the Commonwealth of Virginia and applicable local jurisdictions.

**15. EMPLOYEE RELOCATION PROGRAM.**

The Seller is participating in any type of employee relocation program ☐ Yes OR ☒ No.

If "Yes": (a) the program is named: _____ , Contact # _____ and

(b) terms of the program are: _____

_____

If "No" or the Seller has failed to list a specific employee relocation program, then the Broker shall have no obligation to cooperate with or compensate any undisclosed program.

**16. CONDOMINIUM ASSOCIATION.** The Seller represents that the Property ☐ is, **OR** ☒ is not located within a development which is a Condominium or Cooperative. Condominiums or Cooperatives being offered for sale are subject to the receipt by buyers of the required Disclosures, and the Seller is responsible for payment of appropriate fees and for providing these disclosure documents to prospective buyers as prescribed in the Condominium Act, Section 55-79.39 et seq., and the Cooperative Act, Section 55-424, et seq., of the Code of

Please Initial: Seller ____DS /
P JM

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E3337B92030

Virginia.

The Condominium or Cooperative dues are $ _____ per _____ (frequency of payment).

Special Assessment $ _____ for _____

Condominium or Cooperative Association Name: _____

Management Company: _____ Phone #: _____

**17. PROPERTY OWNER'S ASSOCIATION.** The Seller represents that the Property ⊠ is OR ☐ is not located within a development(s) which is subject to the Virginia Property Owners' Association Act, Sections 55-508 through 55-516 of the Code of Virginia. If the Property is within such a development, the Seller is responsible for payment of the appropriate fees and for providing these disclosure documents to the buyers.

The Property Owners Association dues are $ _____276.32_____ per ___Mo___ (frequency of payment).

Special Assessment $ _____ for _____

Property Owners Association Name: _____ Lansdowne on the potomac _____

Management Company: _____ CMC _____ Phone #: ____703-631-7200____

**18. PROPERTY CONDITION.** The Seller acknowledges that the Broker has informed the Seller of the Seller's rights and obligations under the Virginia Residential Property Disclosure Act. This Property ☐ is, OR ⊠ is not exempt from the Act. If not exempt, the Seller has completed and provided to the Broker a Residential Property Disclosure Statement.

Seller acknowledges Broker is required to disclose to prospective buyers all material adverse facts pertaining to the physical condition of the Property actually known by the Broker. The Broker shall not, however, be obligated to discover latent defects in the Property or to advise on property condition matters outside the scope of the Broker's real estate license. Seller shall indemnify, save, and hold Broker harmless from all claims, complaints, disputes, litigation, judgments and attorney's fees arising from any incorrect information supplied by Seller or from Seller's failure to disclose any material adverse facts.

**19. LEAD BASED PAINT DISCLOSURE.** The Seller represents that the residential dwelling(s) at the Property ☐ were, OR ⊠ were not constructed before 1978. If the dwelling(s) were constructed before 1978, the Seller is subject to Federal law concerning disclosure of the possible presence of lead-based paint at the Property, and the Seller acknowledges that the Broker has informed the Seller of the Seller's obligations under the law. If the dwelling(s) were constructed before 1978, unless exempt under 42 U.S.C. 4852d, the Seller has completed and provided to the Broker the form, "Sale: Disclosure And Acknowledgment Of Information On Lead-Based Paint And/Or Lead-Based Paint Hazards" or equivalent form.

**20. CURRENT LIENS.** Seller represents to Broker that the below information is true and complete to the best of Seller's information, knowledge and belief:

A. The Property is security for a first mortgage or Deed of Trust loan held by (Lender Name):
_____ Account # _____ with an approximate balance of $ _____ . Lender Phone: _____
Address : _____

B. The Property is security for a second mortgage or Deed of Trust loan held by (Lender Name):
_____ Account # _____ with an approximate balance of $ _____ . Lender Phone: _____
Address : _____

C. The Property is security for a line of credit or home equity line of credit held by (Lender Name):
_____ Account # _____ with an

approximate balance of $ _____.   Lender Phone: _____

Address : _____

*Check where applicable:*

**D.** ☐ The Property is not encumbered by any mortgage or Deed of Trust.

**E.** ☒ Seller is current on all payments for the loans identified in numbered items A, B, and C above.

**F.** ☒ Seller is not in default on any loan identified in numbered items A, B, and C, above; and has not received any notice(s) from the holder of any loan identified in numbered items A, B, and C above; or from any other lien holder of any kind, regarding a default under the loan; threatened foreclosure, notice of foreclosure; or the filing of foreclosure.

**G.** ☒ There are no liens secured against the Property for Federal, State or local income taxes; unpaid real property taxes; or unpaid condominium or homeowners' association fees.

**H.** ☒ There are no judgments against Seller (including each owner for jointly held property). Seller has no knowledge of any matter that might result in a judgment that may potentially affect the property.

**I.** ☒ Seller has not filed for bankruptcy protection under United States law and is not contemplating doing so during the term of the Listing Agreement.

During the term of the Listing Agreement, should any change occur with respect to answers A through I above, Seller shall immediately notify Broker and listing agent, in writing, of such change.

**21. SELLER FINANCING.** Seller agrees to offer seller financing by providing a _____ NA _____ Deed of Trust loan in the amount of $ _____ with further terms to be negotiated.

**22. CLOSING COSTS.** Fees for the preparation of the deed of conveyance, that portion of the Settlement Agent's fee billed to the Seller, costs of releasing existing encumbrances, Seller's legal fees, Grantor's Tax, and any other proper charges assessed to Seller will be paid by Seller unless provided otherwise in the sales contract.

The "Seller's Estimated Cost of Settlement" form ☐ is, **OR** ☒ is not attached. These estimates are for informational purposes only and will change based upon the terms and conditions of the purchase offer.

> **Sellers Proceeds:** The Seller acknowledges that Seller's proceeds may not be available at the time of settlement. The receipt of proceeds may be subject to the **Virginia Wet Settlement Act** . and may be subject to other laws, rules and regulations (e.g. Virginia estate statutes and the **Foreign Investment Real Property Tax Act - FIRPTA**).
>
> **Sellers are advised to seek legal and/or financial advice concerning these matters.**

**23. IRS/FIRPTA:** Section 1445 of the Internal Revenue Service (IRS) Code may require the settlement agent to report the gross sales price, Seller's federal tax identification number and other required information to the IRS. Seller will provide to the settlement agent such information upon request. In certain situations, the IRS requires a percentage (currently 10%) of the sales price to be withheld from Seller's proceeds if Seller is a foreign person for purposes of U.S. income taxation. A foreign person includes, but is not limited to, non-resident aliens, foreign corporations, foreign partnerships, foreign trusts or foreign estates.

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E33379B8919

Seller represents that Seller ☐ is  **OR** ☒ is not, a foreign person for purposes of U.S. income taxation.

## 24. MISCELLANEOUS PROVISIONS.

### A. Seller Representations and Warranties.

- Seller has capacity to convey insurable and marketable title to the Property.

- Seller is not a party to a listing agreement with another broker for the sale, exchange or lease of the Property.

- No person or entity has the right to purchase, lease or acquire the Property, by virtue of an option, right of first refusal or otherwise.

- The Seller ☐ is, **OR** ☒ is not a licensed (active/inactive) real estate agent/broker.

- Seller ☐ has **OR** ☒ has no knowledge of the existence, removal or abandonment of any underground storage tank on the property.

**B. Access to the Property.**  Seller shall provide keys to Broker for access to the Property to facilitate the Broker's duties under this Agreement. In the event the Property is subject to a lease, the Seller shall provide Broker with the lease documents and shall use best efforts to obtain the full cooperation of the tenants, in connection with showings and inspections of the Property.

**C. Seller Assumption of Risk.**    The Seller retains full responsibility for the property, including all utilities, maintenance, physical security and liability until title to the property is transferred to purchaser. Seller is advised to take all precautions for safekeeping of valuables and to maintain appropriate property and liability insurance through Seller's own insurance company.

Broker is not responsible for the security of the property or for inspecting the property on any periodic basis. If the property is or becomes vacant during the Listing Period, Seller must notify Seller's home owner's insurance company and request a "Vacancy Clause" to cover the property.

In consideration of the use of Brokers services and facilities and of the facilities of any Multiple Listing Service, the Seller and Seller's heirs and assigns hereby release the Broker, sales associates accompanying buyers or prospective buyers, any Multiple Listing Service and the Directors, Officers and employees thereof, including officials of any parent Association of REALTORS®, except for malfeasance on the part of such parties, from any liability to the Seller for vandalism, theft or damage of any nature whatsoever to the Property or its contents that occurs during the Listing Period. Seller waives any and all rights, claims and causes of actions against them and holds them harmless for any Property damage or personal injury arising from the use or access to the Property by any persons during the Listing Period.

**D. Appropriate Professional Advice.** The Broker can counsel on real estate matters, but if the Seller desires legal advice, the Seller is advised to seek legal counsel. The Seller is advised further to seek appropriate professional advice concerning the condition of the Property or tax and insurance matters.

**E. Subsequent Offers After Contract Acceptance** . After a sales contract has been ratified on the Property, Broker recommends Seller obtain the advice of legal counsel prior to acceptance of any subsequent offer.

**F. Governing Law.**  The laws of Virginia shall govern the validity, interpretation and enforcement of this Agreement.

**G. Binding Agreement.** This Agreement will be binding upon the parties, and each of their respective heirs, executors, administrators, successors and permitted assigns. The provisions hereof will survive the sale of the Property and will not be merged therein. This Agreement, unless amended in writing by the parties, contains the final and entire agreement and the parties will not be bound by any terms, conditions, oral statements, warranties or representations not herein contained.

Please Initial:  Seller ⎧ **DS** ⎫
⎩ PJM ⎭

DocuSign Envelope ID: 61142E5A-30E0-4C37-92AC-9E3337B08079

**25. ADDITIONAL TERMS:** _____

_____

_____

_____

| | | | |
|---|---|---|---|
| 11/4/2011 | *Patrick J. Mooney* | | |
| Date | Patrick J Mooney | Date | |
| 11/4/2011 | *Jean K. Garrell* | 11/6/2011 | *Rick Cockrill* |
| Date | Jean Garrell | Date | |

## Sales associates Contact Information

Phone: (H)_____ (W)_____ (Cell)  703-599-178  (Fax)_____

Email:_____ jean@garrellhomes.com _____ Fax:_____

© **2009 Northern Virginia Association of REALTORS, Inc.**

This is a suggested form of the Northern Virginia Association of REALTORS®, inc. ("NVAR"). This form has been exclusively printed for the use of REALTOR® and Non-Resident members of NVAR, who may copy or otherwise reproduce this form in identical form with the addition of their company logo. Any other use of this form by REALTOR ® and Non-Resident members of NVAR, or any use of this form whatsoever by non-members of NVAR is prohibited without the prior written consent of NVAR. Notwithstanding the above, no REALTOR® or Non-Resident member of NVAR, or any other person, may copy or otherwise reproduce this form for purposes of resale.

VIRGINIA:

IN THE CIRCUIT COURT OF LOUDOUN COUNTY

LYNN M. ZDANOVEC

    Plaintiff,

vs.                           CL NO. 72408

PATRICK J. MOONEY

    Defendant.

## PENDENTE LITE ~~CONSENT~~ ORDER

THIS MATTER HAVING COME upon Plaintiff's, LYNN M. ZDANOVEC's Motion for an order enjoining the Defendant from transferring, disposing, or selling any of the parties' marital assets pendent lite, in particular with respect to the parties marital residence located at 19027 Hallbrook Court, Leesburg, VA; and, for an order requiring Defendant to provide health insurance for Plaintiff and the parties' minor children forthwith; and, it appearing to the court that certain relief is proper and should be granted; it is hereby

ADJUDGED and DECREED that neither party shall transfer, dispose, or otherwise sell any marital property of the parties over which this Court has jurisdiction in this matter, in particular with respect to the real property located at 19027 Hallbrook Court, Leesburg, Virginia, *so that such be preserved for a 20-107.3 hearing*

ADJUDGED and DECREED that Defendant shall provide health insurance coverage forthwith for Plaintiff and the parties' minor children until further order of the court.

AND THIS MATTER IS CONTINUED.

ENTERED THIS 12ᵗʰ day of _April_, 2012.

_____
JUDGE, Loudoun County Circuit Court

**Ex. C**

A COPY TESTE,
Gary M. Clemens, Clerk
By _____
Deputy Clerk

SEEN AND _Objected_ :

**HIRSCH & EHLENBERGER, P.C.**
Counsel for Defendant
Suite 401, Reston Executive Center II
12110 Sunset Hills Road
Reston, Virginia  20190
(703) 481-6063
(703) 481-6066 (fax)


BY: _Nicole M. Burns_
~~Brian M. Hirsch, Esquire~~
~~VSB # 24896~~
Nicole M. Burns, Esq
VSB # 80187


**WE ASK FOR THIS:**

**HALE CARLSON BAUMGARTNER, P.L.C.**
Counsel for Plaintiff
10511 Judicial Drive
Fairfax, Virginia 22030
(703) 591-4900 (tel.)
(703) 591-5082 (fax)


BY: _Dana James Carlson_
Dana James Carlson, Esquire
VSB # 20922


- Objected by Defendant as to the provision requiring
Defendant to provide health insurance coverage for
the Plaintiff, as she is ineligible to be covered as a
spouse pursuant to the Idaho divorce decree.

2