# UNITED STATES BANKRUPTCY COURT

# DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | **Case No. 12-01243-TLM** |
| **PATRICK JOSEPH MOONEY,** | ) | |
| | ) | **Chapter 13** |
| Debtor. | ) | |
| _____ | ) | |

## MEMORANDUM OF DECISION
_____

Chapter 13 debtor Patrick Mooney filed a Motion Seeking Contempt Citation for Violation of the Discharge Injunction, Doc. No. 99 ("Motion"), against his ex-wife, Lynn Mooney.[1]  On May 11, 2015, the Motion was heard at an evidentiary hearing and taken under advisement following closing argument.[2]  This Decision constitutes the Court's findings and conclusions on the contested matter. *See* Rules 7052, 9014.[3]

_____

[1]  Debtor's submissions refer to his former spouse as Ms. Zdanovec (her maiden name), contending she used that name in Virginia state court proceedings.  Her filings in this Court, however, are as Lynn Mooney, which she states is still her current legal name.  Consequently, and for clarity, the Court will refer to the parties by their first names in this Decision.  No disrespect is intended.

[2]  In addition to the facts established through the exhibits and testimony at hearing, the Court takes judicial notice of its files and records, *see* Fed. R. Evid. 201, in order to establish the litigation background of this case, including the filings made and positions taken by the parties prior to the instant Motion.

[3]  Unless otherwise indicated, statutory references are to the Bankruptcy Code, Title 11 U.S. Code §§ 101–1532, and Rule references are to the Federal Rules of Bankruptcy Procedure.

MEMORANDUM OF DECISION - 1

**BACKGROUND AND FACTS**

Patrick and Lynn were married on July 23, 2005, in Virginia Beach,

Virginia.  Their four children were born in 2004, 2005, 2008 and 2010.  They

resided at 19027 Hallbrook Ct., in Leesburg, Virginia (the "Residence").  Patrick

testified at hearing that he left Virginia and relocated to Idaho in January 2012.  He

then filed a divorce action in Idaho state court in February 2012.  Lynn's divorce

action was filed on March 2, 2012, in Virginia state court.  The Idaho court entered

a judgment of divorce on April 9, 2012.

The Virginia action sought not just a divorce, but also to resolve custody,

spousal support and child support issues.[4]  Lynn also asked the Virginia court to

determine the title, ownership and value of all real and personal property;

determine marital property, separate property, and property that was a combination

of the two; divide, transfer or partition marital property titled in the names of both

parties; and "grant [Lynn] a monetary award, payable in either a lump sum or over

a period of time in fixed amounts."  Ex. 202.

After the Idaho divorce judgment was entered, and after Patrick filed an

answer in the Virginia action, he filed his May 23, 2012 petition commencing a

chapter 13 case before this Court.  Ex. 200.

---

[4]  *See*, *e.g.*, Ex. 200 at 31 (Patrick's statement of financial affairs at response to question
4, identifying Idaho action as a "divorce" proceeding resulting in a "Judgment of Divorce" and
the Virginia proceeding as one for "Custody & Support" which was "ongoing.")

MEMORANDUM OF DECISION - 2

Patrick's schedule A identified the Residence, as well as certain other real property interests. However, in regard to the Residence, the disclosure of the "nature of debtor's interest in property" was left blank, and the disclosure of whether that property was owned by "husband, wife, joint, or community" was also not completed. *See* Ex. 200 at 8. However, in later submissions related to his attempts to sell the Residence (a topic discussed further below), Patrick indicated he acquired fee simple interest to the property, in his individual name alone, under a July 23, 2010 deed. Doc. Nos. 41, 41–3.

Patrick did not list Lynn as a creditor on schedules D, E or F. He did list her as a "co-debtor" on schedule H.[5] It is undisputed, though, that he put Lynn on the master mailing matrix ("MML") and that notice of bankruptcy was sent to her at the Residence on May 26, 2012.[6] The notice contained the September 20, 2012 bar date established for filing non-governmental proofs of claim.

Patrick scheduled the value of the Residence as $900,000 with two secured claims totaling $802,063: a mortgage to Bank of America ($712,063) and an IRS tax lien ($90,000). Patrick filed his chapter 13 plan with the petition. Doc. No. 3 ("Plan"). The Plan proposed 60 monthly payments of $4,000 to the trustee. That

---

[5] Ex. 200 at 24. That co-debtor scheduling is limited to a single creditor, Wilson Resort Finance, a secured creditor on a Florida time share. *Id.* at 17 (schedule D).

[6] *See* Ex. 200 at 43; *see also* Doc. No. 12 at 3 (BNC certificate of service regarding notice of commencement of case, claim bar date, and deadlines).

MEMORANDUM OF DECISION - 3

would provide for payment of the IRS lien with interest (at $1,616.44 per month) through the trustee, and Patrick proposed making direct payments to Bank of America on its secured claim.  The Plan provided for vesting of property in the debtor upon confirmation.

On June 19, 2012, Patrick filed a pre-confirmation motion under §§ 363(b) and 1303 seeking approval to sell the Residence for $900,000 under an April 12, 2012 contract, estimating the estate would receive about $43,500 net after costs of sale and satisfaction of both the IRS lien and the Bank of America security interest.  Doc. No. 22.  Patrick noted, though, that the Residence was subject to a *pendente lite* order of the Virginia court prohibiting transfer, disposition or sale absent that court's approval.[7]  He asserted, in this regard, that a July 10, 2012 hearing in the Virginia court should resolve that issue.  *Id.*  This motion was served on all MML creditors, including Lynn.  *Id.* at 6.

Lynn—appearing in this Court through counsel and characterizing herself as an "interested party"—objected to the motion on July 9, 2012.  Doc. No. 29.  She disputed the nature of Patrick's interest in the Residence, and relied on her own claim to an ownership interest in the Residence as "marital property" under Virginia law.  She also argued she and the children would be required to move if it was sold and thus suffer hardship, and that the proposed purchase price was too

---

[7]  *See* Doc. No. 22 at 39–40.

MEMORANDUM OF DECISION - 4

low.  Lynn also noted that she anticipated seeking relief from the § 362(a) stay in order to pursue issues of property division in the Virginia court.  *Id.*[8]  Lynn scheduled her objection for hearing on August 6, 2012, but Lynn and Patrick subsequently agreed to continue the hearing to August 27, 2012.  Doc. Nos. 30, 36.

Patrick's response to the objection indicated that Lynn's interest in the Residence was equitable, not legal, in nature, because the property was titled in his name alone.  He asserted that the Virginia court, under applicable statute, could not order the division or transfer of that property (since it was not jointly owned) nor give Lynn an interest in it, but that court could award her a money judgment.  Doc. No. 41.[9]

At the August 27 hearing on the sale motion and objection, counsel for Lynn and Patrick agreed to a further continuance to October 16 in conjunction with the rescheduled plan confirmation hearing.

Lynn did not file a proof of claim by the September 20 bar date.  The lack of any filed claim was duly noted in Patrick's October 9 prehearing brief.  *See* Doc. No. 58 at 3–6.  Patrick argued that Lynn's potential monetary award under

---

[8]  Lynn recognized that the Virginia court's hearing of custody and support matters was not stayed, citing to § 362(b)(2)(A)(ii) and (iii), and further stated that she anticipated filing a motion for stay relief to allow the Virginia court to also address the nature, extent and division of the parties' property interests.  *Id.* at 2.  She never filed such a motion.

[9]  Va. Code Ann. § 20-107.3(B) states: "For the purposes of this section only, both parties shall be deemed to have rights and interest in the marital property.  However, such interests and rights shall not attach to the legal title of such property and are only to be used as a consideration in determining a monetary award, if any, as provided in this section."

MEMORANDUM OF DECISION - 5

Virginia statute was a pre-petition claim and that, by failing to file a proof of claim, Lynn lacked standing to object to confirmation of the plan, or to object to the sale based on an asserted inadequate sale's price. *Id.*

At the October 16 hearing, Lynn's counsel elected to withdraw all objections to the sale except for the allegation of an inadequate purchase price. Her counsel responded to Patrick's contentions regarding standing by asserting Lynn's interest in the Residence was "equitable" in nature and sufficient for her "interested party" standing. Admitting Lynn had not filed a proof of claim, Lynn's counsel argued that, if and when she received a money judgment from the Virginia court, it would be a "post-petition claim." For that reason, counsel stated, Lynn's appearances in the bankruptcy court were expressly made as an "interested party" rather than as a "creditor." Debtor's counsel rejoined, arguing the equitable interest and related right to potential money judgment constituted, under the Code, a pre-petition claim because the Virginia divorce action in which Lynn asserted such a right to a money judgment had been filed by her before bankruptcy.

The Court declined to resolve the parties' conflict as to the pre- or post-petition nature of the claim, or to address "standing" questions. The former issue was not properly before it at that time. And the latter was unnecessary to reach because, even assuming standing, Lynn had failed to present anything to support her sole remaining objection that the contract sales price was inadequate. The sale

MEMORANDUM OF DECISION - 6

of the Residence was approved.

The Court also ruled at that hearing, after being advised that objections to confirmation were resolved and would be withdrawn and that there was no other opposition to confirmation, that the Plan would be confirmed.  The confirmation order was entered on February 8, 2013, after the withdrawal of objections and the filing of Patrick's counsel's fee affidavit.  The order of confirmation, Doc. No. 79, provided for a 60 month applicable commitment period and required Patrick to pay 100% of all allowed claims, with interest.

Eight months later, in October 2013, the chapter 13 trustee filed a notice of completion of the Plan.[10]  Patrick's discharge was entered on December 16, and the trustee's final report and account was filed on December 20.  The case was closed on December 24, 2013.

On March 16, 2015, Patrick sought to reopen the case, and the Court granted the request under § 350(b).  Patrick subsequently filed the Motion, requesting the Court find Lynn in contempt for violating the discharge injunction.

---

[10]   Doc. No. 85.  The sale of the Residence provided funds sufficient for the full payment of the secured claims of Bank of America and the IRS, and property-related taxes, dues and assessments.  *See generally* Doc. No. 72 (settlement statement).  The remaining sales proceeds, after expenses, went to the trustee.  Those funds, plus the net proceeds from an unopposed sale of an airplane and the monthly plan payments by Patrick, allowed the trustee to pay all filed and allowed priority and unsecured claims in full.  *See* also Doc. No. 79 (confirmation order, addressing payments); Doc. No. 91 (trustee's final report and account).

MEMORANDUM OF DECISION - 7

**DISCUSSION AND DISPOSITION**

No one disputes the Virginia court can establish spousal and child support obligations without violating the automatic stay or the discharge injunction. But Patrick and Lynn take polar views on whether Lynn's claim under Virginia law for a money judgment is a pre-petition claim subject to discharge or a post-petition claim.

### A.    The nature of Lynn's claim

Bankruptcy courts look to state law to determine property rights in the absence of controlling federal authority. *Butner v. United States*, 440 U.S. 48, 54 (1979) ("Congress has generally left the determination of property rights in the assets of a bankrupt's estate to state law."). Thus, the nature and extent of Lynn's claim must be determined under Virginia law.

Virginia's statutory provisions relevant to this issue are found in Va. Code Ann. § 20-107.3. In a divorce action, the court "shall determine the legal title as between the parties, and the ownership and value of all property . . . and shall consider which of such property is separate property, [and] which is marital property." Va. Code Ann. § 20-107.3(A). The statute defines "marital property" as encompassing "all property titled in the names of both parties" as well as "all other property acquired by each party during the marriage which is not separate property." Va. Code Ann. § 20-107.3(A)(2). Therefore, property acquired during

MEMORANDUM OF DECISION - 8

marriage is presumptively marital property, unless shown to be separate property.
*Ranney v. Ranney*, 608 S.E.2d 485, 492 (Va. Ct. App. 2005).  Recall, the parties
were married in July 2005.  The Residence was acquired in July 2010, by a deed
granted to Patrick while they were still married, and it was their marital residence
until Patrick left in 2011 or early 2012, just prior to the Idaho divorce in April
2012.  Thus, the Residence was marital property.[11]

Patrick does not contest that Lynn has an interest in marital property
generally.  But while the Virginia court may order the transfer or division, or both,
of jointly owned marital property, the statute specifically prohibits the court from
dividing or transferring property that is not jointly owned.  *Linton v. Linton*, 759
S.E.2d 14, 16 (Va. Ct. App. 2014) (citing Va. Code Ann. § 20-107.3(C)).[12]

Lynn concedes she was not on the deed to the Residence and thus had no
"legal" interest in that property.  Under the Virginia Code, "both parties shall be
deemed to have rights and interests in the marital property.  However, such
interests and rights shall not attach to the legal title of such property and are only

---

[11]  Patrick testified that the funds used to purchase the Residence came from his income,
that he paid for all expenses related to the Residence, and that Lynn's name did not appear on the
title.  This is all consistent with the grant deed referred to previously.  But he has not contended
that the Residence was separate property as defined in Va. Code Ann. § 20-107.3(A)(1).  It was,
therefore, marital property.  Va. Code Ann. § 20-107.3(A)(2).

[12]  That section provides in pertinent part that "the court shall have no authority to order
the division or transfer of separate property or marital property, or separate or marital debt, which
is not jointly owned or owed."  *See also* Va. Code Ann. § 20-107.3(A)(2) ("For purposes of this
section marital property is presumed to be jointly owned unless there is a deed, title or other clear
indicia that it is not jointly owned.").

MEMORANDUM OF DECISION - 9

to be used as a consideration in determining a monetary award, if any, as provided

in this section."  Va. Code Ann. § 20-107.3(B).  That award is addressed in

subsection (D):

> In addition, based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E, the court has the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party.  The party against whom a monetary award is made may satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court.  An award entered pursuant to this subsection shall constitute a judgment within the meaning of [Va. Code Ann.] § 8.01-426 and shall not be docketed by the clerk unless the decree so directs.  An award entered pursuant to this subsection may be enforceable in the same manner as any other money judgment.  The provisions of [Va. Code Ann.] § 8.01-382, relating to interest on judgments, shall apply unless the court orders otherwise.

Va. Code Ann. § 20-107.3(D).

Thus, under the Virginia Code, the Residence was marital property

(acquired during marriage and not separate property), but was not jointly owned

(Patrick alone appeared on the deed) and, thus, the Virginia state court had no

ability to divide or transfer it.  Lynn, however, was and is "deemed to have rights

and interests in the marital property," which included the Residence, but those

rights and interests did not "attach to the legal title of such property and are only to

be used as a consideration in determining a monetary award[.]"[13]

---

[13]  As noted, the Residence was sold pursuant to an order entered by this Court following hearing at which Lynn withdrew all contentions other than inadequate sales price, a proposition she failed to establish.  Her "equitable" rights regarding this Residence *per se*, therefore, are

(continued...)

MEMORANDUM OF DECISION - 10

It is this claim for a money judgment that Patrick contends is being pursued in violation of the discharge injunction, and Lynn argues is "post-petition" in nature.

### B.    When Lynn's claim arose

Though the nature of a claim is dictated by state law, *when* the claim arises is a matter of federal law. *Siegel v. Fed. Home Loan Mortg. Corp.*, 143 F.3d 525, 532 (9th Cir. 1998) (citing *California Dept. Of Health Servs. v. Jensen (In re Jensen)*, 995 F.2d 925, 930 n.5 (9th Cir. 1993)); *Hassanally v. Republic Bank (In re Hassanally)*, 208 B.R. 46, 50 (9th Cir. BAP 1997) (citing *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991)).

Under § 101(5)(A), a claim is a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured[.]"  As noted in *In re Roman Catholic Archbishop of Portland in Oregon*, 2005 WL 148775 (Bankr. D. Or. Jan. 10, 2005):

> Congress adopted the expansive definition of claim . . .
>
>> to ensure that "all legal obligations of the debtor, *no matter how remote or contingent*, will be able to be dealt with in the bankruptcy case." H.R. Rep. No. 595, 95th Cong., 2d Sess. 1, 309 (1978) reprinted in 1978 U.S.C.C.A.N. 5963, 6266 (emphasis added) [.]

---

[13](...continued)
limited to their relevance in determining a "monetary award" under the Virginia statutes.

MEMORANDUM OF DECISION - 11

> *In re Jensen*, 995 F.2d 925, 929 (9th Cir. 1993).  Indeed, the breadth of
> the definition of claim is essential to achieve the Bankruptcy Code's
> goal of providing debtors with a fresh start.  *Id.* at 930.

*Id.* at *2.

The Ninth Circuit adopted the "fair contemplation test" in order to determine if a claim is pre-petition in nature.  *See e.g., Jensen*, 995 F.2d at 930–31 (adopting the fair contemplation test and analyzing an environmental claim under that test); *Zilog, Inc. v. Corning (In re Zilog, Inc.)*, 450 F.3d 996, 1000–01 (9th Cir. 2006) (analyzing a discrimination claim under fair contemplation test).  Under the fair contemplation test, "[t]he debtor's prepetition conduct gives rise to a claim to be administered in a case only if there is a relationship established . . . between an identifiable claimant or group of claimants and that prepetition conduct." *Hassanally*, 208 B.R. at 52 (quoting *In re Piper Aircraft Corp.*, 58 F.3d 1573, 1577 (11th Cir. 1995)).  "[A] claim arises when a claimant can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law."  *SNTL Corp v. Centre Ins. Co. (In re SNTL Corp.)*, 571 F.3d 826, 839 (9th Cir. 2009); *see also O'Loghlin v. County of Orange*, 229 F.3d 871, 874 (9th Cir. 2000) (noting that for the purposes of discharge, a claim arises "at the time of the events giving rise to the claim, not at the time plaintiff is first able to file suit on the claim").

MEMORANDUM OF DECISION - 12

Lynn filed the Virginia action on March 2, 2012.  Ex. 101.  In her complaint, she requested not only that the Virginia court identify marital property and separate property, but equitably distribute the marital property between the parties.  In such regards, she specifically requested the court "grant to [her] a monetary award, payable in either a lump sum or over a period of time in fixed amounts."  Ex. 100 at 3.  Given the structure of the Virginia statutes, this is a clear reference to Va. Code Ann. § 20-107.3(D) which provides for that award and its treatment as a judgment.

Lynn's complaint and request therein for a monetary award were filed with the Virginia court nearly three months prior to Patrick's bankruptcy petition.

In *Monsour v. Monsour (In re Monsour)*, 372 B.R. 272 (Bankr. W.D. Va. 2007), a chapter 7 debtor-husband reopened his case to argue that his obligation to make a lump-sum payment to his ex-wife was discharged, and that she violated the discharge injunction by obtaining and attempting to collect such an award post-bankruptcy.  The parties there were married in 1970; the ex-wife filed for divorce in 1994; the decree of divorce was entered in April 1996, reserving for later determination all issues of support and equitable distribution.[14]  Debtor's bankruptcy was filed in October 1996.  After the bankruptcy, the state court

---

[14]   In a footnote, the court noted that support was codified in Va. Code Ann. § 20-107.1 and equitable distribution in Va. Code Ann. § 20-107.3, and observed that "A distinct difference . . . exists between a spousal support award and a monetary award made pursuant to [Virginia] Code § 20-107.3 (1994)."  *Id.* at 275 n.1 (quoting *Brown v. Brown*, 361 S.E.2d 364, 368 (1987)).

MEMORANDUM OF DECISION - 13

resolved the support issues and entered a decree establishing a $249,000 "lump

sum obligation."  *Id.* at 275–76.

To address the discharge issue, the *Monsour* court noted it "must first

determine whether the lump sum obligation imposed upon [debtor] by a post-

petition state court decree arose pre-petition or post-petition, where the state court

entered the divorce decree before the debtor filed bankruptcy."  *Id.* at 279.  It

recognized that this was an issue of federal bankruptcy law, not state law, and

driven among other things by the definition of "claim" in § 101(5), and by

Congress' intent that such definition be broadly construed.  *Id.* at 279–80.  The

court in *Monsour* stated:

> In this case, the underlying conduct giving rise to the claim
> occurred prior to the [bankruptcy] petition date.  That is, prior to the
> petition date, the parties married, the wife filed for divorce, and the
> [Virginia] Circuit Court entered the Final Decree of Divorce.  The
> Commissioner did not make his recommendations concerning spousal
> support, nor did the Circuit Court enter its Decree concerning the same,
> prior to the petition date.  However, the failure of either the
> Commissioner or Circuit Court to make conclusive findings concerning
> the actual award of spousal support and equitable distribution is not the
> conduct giving rise to the claim, for the pendency of these findings only
> kept the claim contingent as of the petition date.

*Id.* at 280.  Thus, "the contingent nature of [the ex-wife's] claim in this case . . .

does not change the fact that the act giving rise to the liability occurred pre-

petition.  Therefore, absent an applicable exception, the pre-petition debt is

MEMORANDUM OF DECISION - 14

dischargeable." *Id.*[15]

In another Virginia bankruptcy decision, *Phillips v. Sanchez (In re Sanchez)*, 1997 WL 861753 (Bankr. E.D. Va. Nov. 7, 1997), the debtor and his wife purchased jointly (as tenants by the entirety) residential real property in 1994. They separated in September 1995, and debtor filed for divorce in December 1995. Debtor's bankruptcy petition was filed in October 1996. The issue before the court arose from the debtor's chapter 7 trustee's request for approval of sale of the real property under § 363(h). Debtor's wife, who at the time of the motion occupied the residence, had asserted her right to equitable distribution under Virginia law, and contended that the home should not be sold before the state court made a final determination as to the parties' respective interests.[16] The court stated:

> The law governing the equitable distribution of marital property in Virginia is found in § 20-107.3 of the Virginia Code. Similar to Pennsylvania, Virginia treats the equitable distribution right as one which vests at the time the divorce proceeding is filed. *See Parra v. Parra*, 1 Va.App. 118, 336 S.E.2d 157 (1985) (stating that the court must use the date of the filing of the bill of complaint for divorce as the date at which the equities of the parties in their property are determined).

---

[15] The ex-wife in *Monsour* made two arguments: first that the claim was post-petition in nature and thus not subject to the debtor's discharge and, second, that the state court imposed the lump sum obligation as "support" rather than as an equitable distribution, thus excepting the obligation under § 523(a)(5). Though losing the first, the ex-wife prevailed on the second. *Id.* at 280–82.

[16] The situation thus presents a slightly different question under the Virginia statutes than that here. Those statutes allow for equitable distribution of jointly owned marital property as well as for a monetary award and judgment. However, in connection with the "timing" of the claim, it is a distinction without a difference.

MEMORANDUM OF DECISION - 15

*Id.* at *2.[17]

The approach taken in these Virginia bankruptcy cases is consistent with the "fair contemplation" approach under Ninth Circuit authority.  *See In re Emelity*, 251 B.R. 151, 154–57 (Bankr. S.D. Cal. 2000) (analyzing and rejecting "right to payment" or "accrued state law claim" approach as not viable in the Ninth Circuit "because 'it interprets the term claim more narrowly than Congress intended'" (citing *In re Hassanally*, 208 B.R. at 51).  *See also SNTL Corp.,* 571 F.3d at 839 (determining that a claim arises when the claimant "can fairly or reasonably contemplate the claim's existence even if a cause of action has not yet accrued under nonbankruptcy law"); *Bechtold v. Gillespie (In re Gillespie)*, 516 B.R. 586, 590–91 (9th Cir. BAP 2014) (citing *SNTL*).

Consequently, under § 101(5)(A), Lynn's assertion of a right to a monetary award under the Virginia statutes in her March 2, 2012, pre-bankruptcy divorce complaint constituted a claim, even though her complaint was opposed by Patrick and even though her right to or the amount of any such award was not yet established or liquidated.  Lynn's claim was "fairly contemplated" despite its disputed and unliquidated nature.  Her claim arose pre-petition.  This conclusion is supported not only by Ninth Circuit authority regarding the timing of claims, but

---

[17]   The court had previously cited a Pennsylvania case, *In re Wilson*, 85 B.R. 722, 726 (Bankr. E.D. Pa. 1988), for the proposition that the "state law right to seek equitable distribution 'vests' at the time the divorce proceeding is commenced and equitable distribution is requested." *Id.* at *2.

MEMORANDUM OF DECISION - 16

also by the decisions of bankruptcy courts in Virginia.

### C.    Dischargeability of the monetary award claim

Under the pertinent portions of § 1328(a)(2), the court shall grant a chapter 13 debtor a discharge of all debts provided for by a confirmed and completed plan, except any debt of the kind specified in § 523(a)(1)(B), 1(C), (2), (3), (4), (5), (8), or (9).  Section 523(a)(5) excepts from discharge debts for "domestic support obligations."  The Code defines a domestic support obligation in § 101(14A).  While under that definition, the debt can be established before, on or after the date of the order for relief, it must be "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated[.]" *See* § 101(14A)(B).  Given that definition and the incorporation of § 523(a)(5) by § 1328(a)(2), debts owed to or recoverable by a former spouse such as Lynn in the nature of alimony, maintenance, or support are nondischargeable.  These propositions are not contested by the parties.

The difficulty here is that no judgment has been entered by the Virginia court.  Thus (and unlike the situation in *Monsour*, discussed above), the Court cannot address whether a given award or portion of an award is nondischargeable support.  This Court has not been presented with any judgment, order or other document by the Virginia court establishing, much less characterizing, any specific

MEMORANDUM OF DECISION - 17

given debt owed Lynn.[18]  The best that this Court can say at present is that any

pursuit by Lynn of the monetary award provided for under Va. Code Ann. § 20-

107.3(D) after entry of discharge on December 16, 2013, has been in violation of

the discharge injunction, and any continued pursuit of the same by her from here

on out would also be violative of that injunction.

      The Court will return to this aspect in addressing the contempt relief sought

by Patrick.  First, though, it must resolve a subsidiary issue raised by Lynn.

### 1.      Notice and actual knowledge

      Lynn argues that, because Patrick did not schedule her "as a creditor" on

schedules D, E or F but, instead, only showed her as a co-debtor on schedule H,

she is an unscheduled creditor and her claim to a monetary award is not subject to

discharge under § 523(a)(3)(A), a provision also incorporated by § 1328(a)(2).

Section 523(a)(3)(A) provides that a discharge is not effective as to a debt that is

"neither listed or scheduled under § 521(a)(1) of this title, with the name if known

to the debtor, of the creditor to whom such debt is owed, in time to permit—(A) if

such debt is not of a kind specified in paragraph (2), (4), or (6) of this subsection,

---

[18]   The parties' stipulated admission of Exs. 101 and 102 is of no help.  Those are but extremely terse dockets of filings in the Virginia court and provide no information useful in addressing the matters at issue.  Nor was testimony about the Virginia action particularly enlightening.  For example, that testimony indicated, though without appreciable detail, that temporary support and alimony had been ordered by the Virginia court, but that final orders awaited further hearing.  Under Va. Code Ann. § 20-107.3(F), the court's determination of any monetary award shall be "without regard to maintenance and support awarded for either party or support for the minor children of both parties" and the statute also gives the court the ability to enter support orders and, on motion of either party, to consider modification or vacation of such orders.

MEMORANDUM OF DECISION - 18

timely filing of a proof of claim, unless such creditor had notice or actual

knowledge of the case in time for such timely filing[.]"

In *Espinoza v. United Student Aid Funds, Inc.*, 553 F.3d 1193 (9th Cir.

2008), the Ninth Circuit said that constitutionally adequate notice is "notice

reasonably calculated, under all the circumstances, to apprise interested parties of

the pendency of the action and afford them an opportunity to present their

objection." *Id.* at 1202 (citing *Mullane v. Cent. Hanover Bank & Trust Co.*, 339

U.S. 306, 314 (1950). *Espinoza* emphasized that the receipt of a notice from the

bankruptcy court that a debtor initiated a bankruptcy proceeding puts a potential

creditor on constructive notice that its claim may be affected, and such a party

"ignores those proceedings to which the notice refers at its peril." *Id.* at 1203

(citing *Lawrence Tractor Co. v. Gregory (In re Gregory)*, 705 F.2d 1118, 1123

(9th Cir. 1983)).  Ultimately, "[i]f a party is adequately notified of a pending

lawsuit, it is deemed to know the consequences of responding or failing to

respond, even if gaining actual knowledge requires inquiry into court files, hiring a

lawyer or conducting legal research." *Id.*

Lynn has not provided persuasive authority for her contention that the

manner of scheduling here did not provide her with constitutionally-required

notice.

In addition, § 523(a)(3)(A) speaks not only of the listing or scheduling of

the creditor, but excepts from nondischargeability the claims of a creditor who

MEMORANDUM OF DECISION - 19

"had notice or actual knowledge of the case" in time to timely file a proof of claim.
Both the listing/scheduling and the notice/actual knowledge aspects are implicated
here.

First, § 523(a)(3)(A) addresses protection for creditors who are neither
"listed" nor "scheduled."  Listed and scheduled are not terms defined in § 101.
However, they cannot be viewed as merely synonymous because such an
interpretation makes those terms redundant, and Congress is presumed to have
intentionally used terms with meaning.  Even more to the point, the terms are also
found in § 521(a)(1) addressing a debtor's duties.  That section requires a debtor to
file "a *list* of creditors" and a "schedule" of assets and liabilities.  *See*
§ 521(a)(1)(A), (B)(i).[19]  That Lynn was *listed* on the MML with an accurate
address, and received the notice of the filing, the § 341(a) meeting, and the claims
bar date, is not disputed.  Because she was listed, her claims do not fall within
§ 523(a)(3)(A), and are subject to discharge.[20]

Second, that Lynn was "scheduled" as a co-debtor on schedule H, rather

---

[19]  In *Equity Prop. Mgmt., Inc. v. Harper (In re Harper)*, 108 F.3d 1385 (9th Cir. 1997),
the Ninth Circuit affirmed a BAP ruling that an omitted debt was not discharged under
§ 523(a)(3)(A), and specifically referenced "the schedules and lists filed pursuant to 11 U.S.C.
§ 521(1)."  *Id.* at *1 (referring to a prior version of § 521(a)(1)).

[20]  As stated in *Mahakian v. William Maxwell Invs., LLC (In re Mahakian)*, 529 B.R.
268, 275 (9th Cir. BAP 2015): "The language contained in § 523(a)(3)(A) is clear and not
ambiguous: a debt is excepted from discharge if the creditor was *neither listed nor scheduled* and
did not otherwise know of the bankruptcy case in time to file a timely POC [proof of claim].  As
there is nothing for us to interpret, we must enforce the statute according to its terms."  (emphasis
added).

MEMORANDUM OF DECISION - 20

than on schedule F as a creditor with a disputed, contingent or unliquidated debt is

not a distinction that makes a difference.  In *In re Hawley*, 2003 WL 21105074

(Bankr. D. Idaho Apr. 10, 2003), this Court considered an alleged violation of the

§ 524 discharge injunction by a party (Reeves) who had lived with but never

married the debtor.  The debtor listed Reeves on his schedule H as a co-debtor on a

vehicle debt (the "Ford" obligation), but not on schedules D, E or F.  About a year

after bankruptcy, the couple "separated" and entered into an agreement regarding a

child born post-bankruptcy and certain obligations they had, including the Ford

debt.  In addressing the discharge issue, the Court stated:

> Reeves as a co-obligor was exposed at the time of Debtor's petition to
> the possibility that she would be called upon to answer to Ford.  Thus,
> she had a pre-petition claim against Debtor, even though it was
> unliquidated at the time Debtor filed for bankruptcy relief.  *See*
> § 101(5) (broadly defining "claim").  Creditors who are aware of a
> bankruptcy are subject to the discharge of their pre-bankruptcy claims
> against a debtor, regardless of the manner in which the debtor listed or
> scheduled them.

> Although Reeves was not listed "as a creditor" on schedules D
> through F, the record shows that Reeves had actual notice of the
> bankruptcy.  She . . . was listed on the mailing matrix and was provided
> with the Court's notices issued in the case.  In addition, she was aware
> that she was a co-obligor on the Ford obligation and knew that
> obligation was being addressed in Debtor's bankruptcy.

*Id.* at *4.[21]  Lynn has failed to persuasively support the proposition that the manner

---

[21]  Reeves also had actual knowledge of the case because she accompanied the debtor to
his counsel's office as the petition and schedules were being prepared.  *Id.* at *1.  The Court
ultimately found that the Ford debt was subject to discharge.  But, on the evidence presented, the
Court found two other obligations addressed in the "agreement" were post-petition in nature.

MEMORANDUM OF DECISION - 21

of scheduling (*i.e.*, on schedule H not D-F) matters.  Thus, here, Lynn was both

"listed" and "scheduled" by Patrick.

Third, even if one supposes "improper scheduling," Lynn had both notice

and actual knowledge of the bankruptcy, and even appeared through counsel and

participated in the bankruptcy case well prior to the claim bar date.  As a respected

treatise states:

> [I]f the creditor had "notice or actual knowledge of the case" in time for
> timely filing of a proof of claim . . . , the debt will be discharged even
> though not listed or scheduled, listed or scheduled improperly, or listed
> or scheduled tardily.

4 Collier on Bankruptcy ¶ 523.09[4][a] (Alan N. Resnick & Henry J. Sommer eds.,

16th ed.) (citing *Lompa v. Price (In re Price)*, 79 B.R. 888 (9th Cir. BAP 1987)).[22]

Patrick testified at hearing that he did not list Lynn as a creditor in his

schedules (D, E or F) partly because he did not feel her state court claim fit neatly

in those schedules and partly based on reliance on his counsel.  Lynn testified that,

even though not scheduled as a creditor, she nevertheless knew of the bankruptcy

by virtue of the § 341 notice she received.  Moreover, she actively participated in

the bankruptcy by retaining counsel and filing an objection to the sale of the

Residence in July 2012.  And, with prior knowledge of the September 20, 2012

---

[22]  Collier also states: "The exception in section 523(a)(3) for creditors who do not
receive notice of the case but otherwise acquire actual knowledge has consistently been upheld
against challenges based on due process."  4 Collier at ¶ 523.09[4][a] (citing *In re Price*, 871 F.2d
97 (9th Cir. 1989)).  Lynn's arguments here that she was not afforded due process are similarly
untenable.  *See also*, *Gregory*, 705 F.2d at 1123 (rejecting creditor's argument that receiving only
the § 341 notice in a chapter 13 case failed to meet constitutional due process standards).

MEMORANDUM OF DECISION - 22

claim bar date, Lynn not only agreed with Patrick and the trustee to a continuation of the sale hearing to October 16, she declined the opportunity to file a proof of claim.

Regardless of the strategic (or other) reasons for the manner in which Patrick approached scheduling or Lynn approached her appearance, the simple fact remains that Lynn was listed, received notice, and had actual knowledge of the case (and, indeed, participated), all with adequate opportunity to timely file a proof of claim.

The Court finds and concludes that Lynn's pursuit of a "monetary award" under Va. Code Ann. § 20-107.3 is an attempt to collect a discharged claim and that such claim does not fall within the discharge exception of § 523(a)(3)(A). The issue turns to the consequences.

### D.    Contempt

Patrick's Motion seeks sanctions imposed upon Lynn under the Court's contempt powers, specifically: (i) a noncompensatory fine of $5,000; (ii) compensatory damages in the amount of Patrick's attorneys' fees and costs in seeking the ruling of this Court regarding discharge violation, and also the fees and costs of his Virginia counsel incurred "specific to [Lynn's] equitable distribution claim;" and (iii) a "civil fine" of $100/day until Lynn takes appropriate steps to dismiss her equitable distribution claim.

MEMORANDUM OF DECISION - 23

### 1. Authority

This Court has the power to impose civil contempt sanctions under § 105(a). *Knupfer v. Lindblade (In re Dyer)*, 322 F.3d 1178, 1189–90 (9th Cir. 2003) (commenting on the "permissive nature of the contempt authority" and reviewing a bankruptcy court's decision to impose contempt sanctions for an abuse of discretion); *see also Bassett v. Am. Gen. Fin. Co. (In re Bassett)*, 255 B.R. 747, 757–58 (9th Cir. BAP 2000) (noting that bankruptcy courts have broad discretion in determining whether to issue orders to show cause regarding contempt and, thereafter, in fashioning a remedy for proven violations of the discharge injunction), *aff'd in part, rev'd in part on other grounds,* 285 F.3d 882 (9th Cir. 2002). However, the sanctions under the Court's civil contempt powers and § 105(a) "must either be compensatory or designed to coerce compliance." *Dyer,* 322 F.3d at 1192. As there explained, "[T]he language of § 105(a) authorizes only those remedies 'necessary' to enforce the bankruptcy code. . . . The sanctions associated with civil contempt—that is, compensatory damages, attorney fees, and the offending creditor's compliance—adequately meet that goal . . . rendering serious punitive sanctions unnecessary." *Id.* at 1193 (citing *Walls v. Wells Fargo Bank*, 276 F.3d 502, 507 (9th Cir. 2002)). While *Dyer* also concluded that "relatively mild noncompensatory fines" might be necessary under some circumstances, and within the Court's inherent power, it emphasized that such "punitive" penalties do not serve compensatory or coercive purposes, and raise

MEMORANDUM OF DECISION - 24

special concerns.  And it ultimately rejected any ability for imposition of "serious"

punitive sanctions.  *Id.* at 1194–95.

The discharge injunction, provided by 11 U.S.C. § 524 "operates as an

injunction against the commencement or continuation of an action . . . to collect,

recover or offset any [discharged] debt as a personal liability of the debtor."  11

U.S.C. § 524(a)(2).  A party who knowingly violates the discharge injunction can

be held in contempt under § 105(a).  *Zilog*, 450 F.3d at 1007 (citing *In re Bennett*,

298 F.3d 1059, 1069 (9th Cir. 2002)).  The Ninth Circuit has held that, to justify

sanctions, the movant must prove that the creditor (1) knew the discharge

injunction was applicable and (2) intended the actions which violated the

injunction.  *Bennett*, 298 F.3d at 1069.  "More specifically, a creditor must have

actual knowledge of the discharge injunction, but need not have any specific intent

to violate the injunction, as simply engaging in a volitional act that does in fact

violate the injunction is sufficient to trigger sanctions."  *In re Urwin*, 2010 WL

148645, at *4 (Bankr. D. Idaho Jan. 14, 2010) (citing *Perry v. U.S. Bank Nat'l

Ass'n (In re Perry)*, 03.2 I.B.C.R. 128, 129–30 (Bankr. D. Idaho 2003)).  In the

civil contempt context, the focus "is not on the subjective beliefs or intent of the

contemnors in complying with the order, but whether in fact their conduct

complied with the order at issue."  *Dyer*, 322 F.3d at 1191.  The standard for

finding a party in civil contempt is well settled: the moving party has the burden of

showing by clear and convincing evidence that the contemnors violated a specific

MEMORANDUM OF DECISION - 25

and definite order of the court.  The burden then shifts to the contemnors to demonstrate that they were unable to comply.  *In re Urwin*, 2010 WL 148645, at *4 (citing *Perry*, 03.2 I.B.C.R. at 130).

Lynn knew the discharge injunction existed.[23]  She therefore bore the risk of all intentional acts that violated the injunction, regardless of whether she intended to violate the injunction.  *See Perry*, 03.2 I.B.C.R. at 129–30; *Hawley*, 2003 WL 21105074, at *5.

### 2.      Sanctions imposed

#### a.      Punitive sanctions

While the Court has, under *Dyer* and in the exercise of its informed discretion, the ability to impose "relatively mild" or "non-serious" noncompensatory penalties, it is not persuaded that it should do so here.  Patrick's request for a $5,000 noncompensatory fine will be denied.

#### b.      Compensatory sanctions

The Court will allow compensatory sanctions in the amount of the attorneys' fees and costs incurred by Patrick in this Court to reopen the bankruptcy and pursue the instant ruling regarding the pre-petition nature of the claim and Lynn's violation of the discharge injunction.  Patrick's bankruptcy counsel will be

---

[23]   The discharge was entered on December 16, 2013, Doc. No. 89, and notice thereof was issued through BNC, Doc. No. 90.  While the BNC mailed the same to Lynn at the Residence (which would have been an ineffective mailing address after the closing of the earlier sale), it was also served on her counsel of record.  *Id.*; *see also* Doc. No. 89 (at Notice of Electronic Filing, reflecting such service).  Service on her counsel was sufficient notice to bind Lynn.

MEMORANDUM OF DECISION - 26

required to submit an affidavit detailing the fees and costs sought.[24]  Such affidavit

will be filed within 21 days of the Court's order entered upon this Decision.

Lynn's counsel shall have 14 days thereafter within which to respond.  Patrick's

counsel will have 7 days to reply.  The matter will then be taken under submission

by the Court.  There will be no hearing on the question of such fees and costs

unless the Court independently determines one would be of benefit

       The Court will also allow compensatory sanctions in the amount of the fees

and costs incurred by Patrick's Virginia counsel from and after December 16,

2013, the date of electronic service of the discharge on Lynn's counsel.  The Court

will require detailed submissions by such counsel within 21 days of the order

entered on this Decision.  It should be noted, however, that because Lynn was not

prohibited from pursuing the support obligations in the Virginia action, Virginia

counsel will be expected to provide appropriately detailed submissions

establishing the claimed fees and costs relate to the defense of the enjoined claim

only.  Lynn shall have 14 days thereafter to submit a response, and Patrick will

have 7 days after the response for a reply.  Again, there will be no hearing unless

the Court independently decides to hold one.

---

[24]  The detail of this and all other fee affidavits discussed herein shall itemize time by the date of service; include a description for each service rendered or task performed; the time spent on each discrete service, in tenths of hours; identification of the person (attorney or certified paralegal only) performing the service; and the hourly or other rate charged for that service. There will be no "lumping" of services or of time spent.  No clerical or administrative services may be claimed.  Only identifiable out of pocket costs may be included, and each such cost will be separately itemized.

MEMORANDUM OF DECISION - 27

### c.      Coercive sanctions

The order entered on this Decision will require Lynn to file pleadings or papers sufficient to amend her complaint in Virginia to exclude pursuit of the monetary award claim that has been determined to be subject to the discharge.  The Court will expect this to be done promptly.

No coercive sanctions, such as the $100 per day suggested by Patrick, will be imposed at this time, as the Court has no evidence suggesting that Lynn will ignore or fail to obey an order of this Court.  While the request by Patrick for coercive sanctions will therefore be denied, such denial will be without prejudice to a future motion by Patrick seeking coercive sanctions and establishing, on notice and hearing, that the order has not been obeyed.

**CONCLUSION**

The Court concludes that Lynn's marital property division and monetary award claim under Va. Code Ann. § 20-107.3(B) and (D) arose pre-petition, is not excepted from discharge under § 523(a)(3) or (5), and was therefore discharged on December 16, 2003 under § 1328.  Lynn's pursuit of that claim is improper, even though other aspects of the Virginia divorce action, *e.g.*, support, are excepted from the discharge.

As a consequence of Lynn's violation of the discharge injunction, and under the Court's recognized inherent powers and § 105(a), Lynn will be ordered to promptly dismiss or withdraw the monetary award claim previously asserted in the

MEMORANDUM OF DECISION - 28

Virginia action.  Lynn will also be ordered to pay Patrick's reasonable attorneys'

fees and expenses incurred in obtaining this Decision from this Court, and the

reasonable fees and costs of Patrick's Virginia counsel in responding to the

discharged monetary claim.  A separate form of order consistent with this Decision

shall be entered.

DATED:  June 23, 2015

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE

MEMORANDUM OF DECISION - 29